WILLIAMS v DEPARTMENT OF STATE HIGHWAYS

DEPARTMENT OF STATE HIGHWAYS v COURT OF CLAIMS JUDGE

1. APPEAL AND ERROR—NONJURY CASES—STANDARD OF REVIEW.

An appellate court will not substitute its judgment on the findings of fact for that of the trial judge sitting as the trier of fact unless the trial judge's decision is contrary to the clear preponderance of the evidence.

2. APPEAL AND ERROR—NONJURY CASES—DAMAGES—AMOUNT OF AWARD—DISCRETION.

An appellate court, upon finding evidence sufficient to support a decision in an action for damages, will not disturb the amount of award, because the measure of damages is within the sound discretion of the trial judge sitting as the trier of fact.

3. NEGLIGENCE—NONJURY CASES—QUESTION OF FACT—APPEAL AND ERROR.

The trial court did not err in determining that the defendant in a negligence case knew or should have known that its traffic-control device was malfunctioning where conflicting proffered evidence created an issue of fact to be resolved by the trial judge, and an appellate court will not substitute its judgment for that of the trial judge in a nonjury case upon such factual questions unless the trial judge's findings are clearly erroneous (GCR 1963, 517.1).

4. NEGLIGENCE—DEPARTMENT OF STATE HIGHWAYS—STATUTES—MAINTENANCE OF TRAFFIC-CONTROL DEVICES.

The statute imposing a duty upon the Department of State Highways to maintain highways in a state of reasonable repair

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 5 Am Jur 2d, Appeal and Error §§ 840, 841.
[2] 4 Am Jur 2d, Appeal and Error § 31 *et seq.*
[4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 195, 196, 741 *et seq.*
[5] 4 Am Jur 2d, Appeal and Error §§ 471–475.
[6] 45 Am Jur 2d, Interest and Usury § 280.

and safe for public travel also imposes upon the department a
duty to maintain and repair traffic lights (MCLA 691.1402).

5. APPEAL AND ERROR—AMENDMENT OF JUDGMENT—JURISDICTION—
   COURT RULES.

   A trial court may amend a judgment for the inclusion of interest
   even after a claim of appeal from the original judgment has
   been filed until the trial record is filed with the appellate court,
   since the trial court possesses concurrent jurisdiction until the
   appeal has been perfected by the filing of the record (GCR 1963,
   802.2[1]).

6. JUDGMENT—INTEREST UPON JUDGMENT—COURT OF CLAIMS.

   Interest upon a judgment granted by the Court of Claims may be
   entered only from the date of the judgment (MCLA 600.6455).

Appeal from Court of Claims, William John
Beer, J. Submitted Division 2 October 9, 1972, at
Lansing. (Docket Nos. 11827, 13236.) Decided De-
cember 6, 1972. Leave to appeal denied, 389 Mich
780.

Complaint by Jeanne Stamper for herself and as
next friend of Pamela Williams against the De-
partment of State Highways for damages resulting
from an automobile accident. Judgment for plain-
tiffs. Defendant appeals. Affirmed with modifica-
tion.

*Mokersky & Dadaou, P. C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Louis J. Caruso*
and *Myron A. McMillan,* Assistants Attorney Gen-
eral, for defendant.

Before: DANHOF, P. J., and BRONSON and T. M.
BURNS, JJ.

BRONSON, J. Pamela Williams and Jeanne Stam-
per, her mother, instituted suit against the Michi-
gan State Highway Department for Pamela's inju-
ries sustained in an automobile accident allegedly

caused by a malfunctioning traffic-control light. The malfunction permitted a green light to be displayed in all four directions at the intersection of Telegraph Road and Northline Road. The case was tried in the Michigan Court of Claims before the trial judge sitting as the trier of fact. The trial judge returned a verdict in the amount of $1,100,000 for Pamela Williams and $100,000 for Jeanne Stamper. Defendant[1] filed a timely appeal in this Court. During the time in which the appeal was pending, the trial judge entered a *nunc pro tunc* order pursuant to plaintiffs' requested amendment modifying the judgment to include interest from the date the complaint was filed. Defendant's challenge to the validity of this order has been consolidated with the present appeal, raising five issues for our consideration. The facts necessary for disposition of these issues are set forth during our consideration of each respective issue.

I. *Is the judgment of the court of claims contrary to the clear preponderance of the evidence?*

It is an elementary proposition of law that a jury verdict is sustained by a reviewing court unless it is contrary to the overwhelming weight of the evidence. *McGever v Schaar,* 365 Mich 481 (1962); *Stowers v Wolodzko,* 19 Mich App 115 (1969), *aff'd,* 386 Mich 119 (1971). This Court has implemented this proposition by adopting a policy of affirming jury decisions if sufficient evidence exists to substantiate their findings. *Hegeman v Lucky Drug Stores, Inc,* 28 Mich App 629 (1970). The same standard, although articulated with dif-

[1] For purposes of clarity, the Michigan State Highway Department is hereinafter referred to as defendant and Pamela Williams and Jeanne Stamper are hereinafter referred to as plaintiff(s) notwithstanding the party designations in the consolidated case.

ferent language, is employed to review the decisions of trial judges sitting as the trier of fact.[2] Unless the trial judge's decision is contrary to the clear preponderance of the evidence, we will not substitute our judgment for his. *Barnes v Beck,* 348 Mich 286 (1957); *Kevreson v Michigan Consolidated Gas Co,* 374 Mich 465 (1965); *Baith v Knapp-Stiles, Inc,* 380 Mich 119 (1968). Our careful review of the record reveals the following evidence upon the issues of liability and damages which we deem sufficient to support the verdict rendered. In view of the significance of this case to the State of Michigan, Pamela, and her family, we set forth the evidence in detail.

The initial evidence offered by plaintiffs upon the issue of liability is found in the testimony of Mary Beck, sister of the injured plaintiff. Mrs. Beck was the driver of the automobile in which Pamela was a passenger and testified that she entered the Telegraph-Northline intersection, traveling south on Telegraph, while the traffic light was green. David Lavigne, driver of the second vehicle involved in the accident, testified that he was driving west on Northline Road as he approached the intersection. Mr. Lavigne observed the traffic light change from red to green when he was approximately 300 to 400 feet from the intersection and entered the intersection on the green light. The collision occurred immediately without either driver observing the presence of the other. The only witness offered to substantiate the fact that the Beck vehicle had a green light was Sam Gambino, driver of a preceding car in the lane adjacent to the one in which the Beck vehicle was

---

[2] We refer to the standard of review for jury verdicts since the instant verdict is challenged as being contrary to the great weight of the evidence. Finding the standards of review for jury and judge-rendered verdicts identical, the language variations are ignored.

traveling. This witness observed the traffic light change from green to yellow to red and he stopped at the intersection. Mr. Gambino stated that the light "changed over again" but he couldn't proceed because the Northline traffic remained in the intersection. This witness did not see the traffic signal change to green prior to the accident because he was watching the traffic. Although this evidence is subject to a degree of ambiguity, its interpretation and weight created a question of fact to be resolved by the trial judge.

Additional evidence was offered to support the existence of a green light for the Lavigne vehicle. Mrs. Lavigne, a passenger at the time of the accident, verified her husband's testimony. Solon Studdard, driver of a vehicle traveling in the same direction as the Lavigne vehicle, testified that he was waiting at the intersection in the right-turn lane. He proceeded when the light turned green and heard a collision after he had completed 80 percent of his turn.

Since plaintiffs' complaint attributed the cause of the accident to a malfunction of the traffic-control device, evidence of prior malfunctions was submitted. Bernice McLaughlin, a resident in the area, testified that on two occasions prior to the accident she had observed that "all the lights were yellow" and "all the lights were red". Mrs. Mc-Laughlin knew that the same signal was displayed in all directions because she could see the reflection of the lights controlling the direction perpendicular to her direction of travel. She observed local police officers directing the traffic when "all the lights were red". Helen Davidson, a cab driver, stated that two or three weeks before the accident she was traveling on Northline Road and stopped at the same intersection. After her light turned

green and a period of time passed, she was prevented from proceeding because several cars continued to enter the intersection on Telegraph Road. This witness could not identify the signal displayed to the Telegraph traffic.

The primary evidence of prior malfunctions was offered by Henry Budzyn, the owner of a gas station on the northeast corner of the intersection. Mr. Budzyn testified that the traffic-control device displayed a green light in all directions on three previous occasions and a red light in all directions on two previous occasions. He notified the police the first time the traffic signal was green for all traffic entering the intersection and was directed to strike the control box with a rubber mallet. This witness stated that he followed the given directions and the traffic lights began to function in their normal sequence. The second time the traffic signal displayed green in all directions, Mr. Budzyn performed the same self-maintenance with similar success. The third time he observed this condition, it corrected itself before he could take any action. Reverend Albert Firchau was an eyewitness to the all-green condition and confirmed Mr. Budzyn's conduct. This witness stated that he personally notified the police department in August, 1967 of the dangerous condition presented. Plaintiffs concluded their proofs upon this issue with the testimony of Richard DeRemer, a police officer. Officer DeRemer stated that on the day in question he observed the yellow light controlling southbound Telegraph, the same direction in which the Beck vehicle was traveling, flicker and go out completely for several seconds. After observing the traffic signal for 30 minutes and observing no additional malfunctions, this witness returned to his duties.

Defendant attempted to rebut this evidence by offering testimony that the repair record maintained by defendant failed to reveal the existence or repair of the claimed condition. These records disclosed the performance of scheduled maintenance and emergency repairs including the replacement of a light bulb and the adjustment of the timing cycle of this traffic light to synchronize it with those of the surrounding area. Donald Nawrocki, defendant's repairman at the scene of the accident, testified that he replaced a fuse, visually inspected the control device and found it to function properly after electrical power was restored. Defendant's rebuttal evidence included the claim that it was physically impossible for the control device to display a green light in all directions. Witnesses for defendant described the use of rotating cams with predesignated alignment in the mechanisms to control the series functions. Richard Blost, an electrical engineer for defendant, testified on direct examination that the light sequence could be altered only if the cams were irreversibly damaged or physically broken. Upon cross-examination this witness conceded that if the retainer links securing the cams were loosened, a cam might slip, stay in a green position and cause a green light in all directions when the cams controlling the opposite direction reached their green position. Upon redirect examination, Mr. Blost stated that this condition was highly improbable since it would be difficult for the cams to return to their normal condition as was alleged to have happened on prior occasions. After sifting, weighing, and evaluating this highly technical and competing evidence offered by the witnesses, we decline to substitute our judgment for that of the trial judge. An application of the above case law

yields sufficient evidence upon this issue to support the trial judge's decision.

With respect to the issue of damages, plaintiffs offered evidence of medical expenses at the date of trial in the amount of $35,000. Pamela, age 16 at the time of the accident, sustained a brain-stem injury which was diagnosed as an aphasic condition deemed to be permanent. Dr. William Hole, an osteopathic physician initially examining plaintiff, described her as having paresis throughout her body. This condition caused a muscular weakness which denied plaintiff the ability to control her arms and legs. She was unable to talk in any fashion and was placed upon a liquid diet because of swallowing difficulties. Dr. Hole found that plaintiff had developed a tremor when attempting to use her limbs and minor epileptic seizures. Plaintiff's medical history further specified that she was suffering from quadriparesis, a partial paralysis of all four extremities and the trunk which resulted in the impairment of locomotion, visual acuity, and expressive speech. This witness offered a poor prognosis and stated that it was reasonable to conclude that plaintiff might not live a normal life-span. Dr. Gerald Briskin, a clinical psychologist, tested plaintiff and found that her motor and speech abilities were handicapped. At the tested age of 17, plaintiff was functioning at the vocabulary level of an eight-year-old and the mental maturity level of a seven-year-old. Further testing was prevented by plaintiff's verbal and motor incapacities.

Therapy programs were established for plaintiff after which she began to show signs of speech, was able to be placed in a wheelchair for short periods of time, and was able to perform self-care activities with assistance. The problems plaintiff experienced

in such self-care activities were caused by spasticity and ataxia, which is a lack of balance. Although plaintiff was receiving speech therapy, rehabilitation efforts were hindered by degenerating vision, making reading difficult. Dr. Joseph Guyon, a physician and surgeon at Wyandotte General Hospital, was consulted regarding the feasibility of returning plaintiff to her home with the continuation of therapy on an out-patient basis. Since the therapy resulted in plaintiff being able to dress herself and ambulate with the assistance of a walker, Dr. Guyon recommended that she be transferred to her home.

Plaintiff's final residence was restricted by her emotional problems. Plaintiff could not function within her family structure and at least one nursing home revoked her residency because of the severity of her emotional problems. Plaintiff was subsequently transferred to the psychiatric division of the Wayne County General Hospital. Dr. Modesta DeGuzman, a staff psychiatrist at Wayne County General Hospital, testified that plaintiff has poor impulse control, a low frustration tolerance, and suicidal tendencies. He considered this emotional condition to be permanent. Based upon this evidence the trial judge concluded that plaintiff (1) sustained permanent brain damage, (2) experienced pain and suffering which will continue for the remainder of her life, (3) was permanently prevented from earning her own living, (4) will require total medical care for the remainder of her life, and (5) will be forever denied the joys of life itself and womanhood. We agree. Finding this evidence sufficient to support the verdict, we leave the amount of the award within the sound discretion of the trial judge sitting as the trier of fact. *Weil v Longyear,* 263 Mich 22 (1933); *Stevens v*

*Edward C. Levy Co,* 376 Mich 1 (1965); *Dillard v Braunstein,* 32 Mich App 216 (1971). While recognizing that the verdict is precedent shattering, we are loath to disturb the trial judge's measure of damages. We should not substitute our opinion for the trial judge's evaluation of the record. Since the evidence upon each issue tried was sufficient, the verdict cannot be set aside as being contrary to the preponderance of the evidence.

II. *Was the trial judge's finding that defendant failed to maintain a traffic-control device in reasonable repair clearly erroneous?*

The trial judge found that defendant's liability was based upon its failure to maintain the traffic-control device at the Telegraph-Northline intersection in reasonable repair. This finding encompassed a determination that defendant knew or should have known that the control device was malfunctioning. Such findings of fact will not be reversed upon review unless clearly erroneous. GCR 1963, 517.1; *Littell v Knorr,* 24 Mich App 446 (1970); *Cooper v State Farm Mutual Automobile Insurance Co,* 33 Mich App 390 (1971); *Laug v Ottawa County Road Commission,* 37 Mich App 757 (1972).

The evidence submitted by the parties upon this issue is included within that summarized for the first issue. Defendant offered records which evidenced prompt repair, reasonable periodic maintenance, and rebutted its knowledge of a condition in which a traffic signal displayed a green light in all directions. Plaintiffs' rebuttal included eyewitness testimony supporting the existence of this condition for a sufficient period of time to constitute constructive notice. A determination of whether defendant's conduct constituted negli-

gence in this context depends upon an application of the reasonably prudent man standard announced in *Marietta v Cliffs Ridge, Inc,* 385 Mich 364 (1971). In view of this standard, the conflicting proffered evidence created an issue of fact to be resolved by the trial judge in this nonjury case. This Court will not substitute its judgment for that of the trial judge upon such factual questions. *Miller v Department of State Highways,* 30 Mich App 64 (1971). The trial judge's findings upon this issue were not clearly erroneous.

III. *Does defendant's statutory liability to maintain highways in reasonable repair and safe for travel include the maintenance of traffic-control devices?*

Defendant's governmental immunity from liability for injuries caused by defective or damaged highways was abrogated by statute. MCLA 691.1402; MSA 3.996(102). This statute imposed a duty upon defendant to maintain highways in a state of reasonable repair and safe for public travel. Since this liability was extended only to the improved portions of the highway, defendant claims that traffic-control devices fall outside the purview of the statute and within the protection afforded by the governmental-immunity doctrine.

The courts of this state have imposed liability upon defendant for the maintenance and repair of stop signs. *O'Hare v Detroit,* 362 Mich 19 (1960); *Lynes v St Joseph County Road Commission,* 29 Mich App 51, 59 (1970). The *Lynes* Court found that "[t]raffic signals which control the flow of traffic are an integral part of the improved portion of the highway". Since the *Lynes* opinion (authored by this writer) considered a stop sign within the announced rule, we do not hesitate to

include the traffic-control device at issue within the scope of defendant's statutory duty. This issue fails to present a meritorious challenge to the trial judge's decision.

IV. *Does the Court of Claims retain jurisdiction to amend a judgment by the inclusion of interest after a claim of appeal has been filed in the Court of Appeals?*

Judgment was entered against defendant on May 14, 1971, from which a claim of appeal was filed. On November 17, 1971, plaintiff filed a motion for a *nunc pro tunc* order to amend the judgment for the inclusion of interest. At the time the motion was filed, the time for filing briefs had not expired and this Court had not received the parties' briefs. The trial judge amended the judgment as requested and defendant challenges the trial judge's jurisdiction for such action.

GCR 1963, 802.1 vests jurisdiction in the Court of Appeals by the filing of a claim. Subsection 2(1) of this rule provides that *"until the record is filed* in the Supreme Court or Court of Appeals, the *trial court * * * has jurisdiction* to grant further time *to do, properly perform, or correct any act* in connection with the appeal, *omitted or insufficiently done * * * "*. (Emphasis added.) This language indicates that the trial court possesses concurrent jurisdiction until the record is filed. The "record" is interpreted by this Court to include the entire lower court file consisting of all original documents and papers filed, a transcript of all proceedings had and all exhibits offered into evidence. GCR 1963, 812 governs the time in which the record must be filed and mandatory items of inclusion. Subsection 3(2) of this rule provides that the record be transmitted to this Court after notice

is given to the clerk of the trial court that the parties' briefs have been filed. The purpose of this rule is to insure that the transcript is available to the parties for the preparation of their briefs. The fact that the parties' briefs in the instant case had not been submitted to this Court at the time plaintiffs filed their amendment is evidence that the record had not been transmitted pursuant to Rule 812. Since the appeal had not been perfected by the filing of this record, Rule 802.2 governs and preserves the trial court's jurisdiction. The *nunc pro tunc* order was entered pursuant to the trial court's exercise of its concurrent jurisdiction.

V. *Was the modification of a judgment by a* nunc pro tunc *order permitting interest from the date the complaint was filed contrary to the interest provisions of the Court of Claims Act?*

The trial judge modified the judgment entered by inclusion of interest from the date the complaint was filed pursuant to MCLA 600.6013; MSA 27A.6013. Defendant contends that interest upon judgment granted by the Court of Claims may be entered only from the date of judgment. MCLA 600.6455; MSA 27A.6455. Plaintiffs concede that defendant correctly states the law, and we agree. We, therefore, enter an award of interest from the date of judgment pursuant to GCR 1963, 820.1.

As modified by this opinion, the judgment of the Court of Claims is affirmed.

Affirmed. Costs to plaintiffs.

All concurred.