GREENLEAF v DEPARTMENT OF STATE HIGHWAYS &
TRANSPORTATION

Docket Nos. 78-370, 78-371. Submitted March 7, 1979, at Lansing.—
Decided May 22, 1979.

Leota A. Greenleaf, as the administratrix of the estate of Rosa
Klaus, deceased, brought an action in the Court of Claims
against the Department of State Highways and Transportation
and against the State of Michigan for damages for the wrongful
death of Rosa Klaus. Leota Greenleaf and Hiram M. Greenleaf,
her husband, also commenced an action in the Court of Claims
against the Highway Department and the State of Michigan for
damages for personal injuries suffered by Mrs. Greenleaf. The
injuries suffered by Mrs. Greenleaf and the wrongful death of
Rosa Klaus resulted from an automobile accident caused when
Mrs. Greenleaf lost control of her automobile upon suddenly
encountering a glare ice condition that covered the entire
bridge of the Silver Lake overpass on U.S. 23 near Fenton.
Rosa Klaus was rendered a quadriplegic as a result of the
accident and remained so until her death 13 months later. The
Court of Claims tried the cases together.

Judgment for the plaintiffs, Wade Van Valkenburg, J. The
defendants appeal, raising the issue of whether a highway
authority can be held liable for an accident caused by ice on a
highway bridge where there is no defect in the bridge itself.
Leota Greenleaf, as administratrix of the estate, cross-appeals

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 39 Am Jur 2d, Highways, Streets, and Bridges § 506 *et seq.*
   Municipal liability for injuries from snow and ice on sidewalk. 81
   ALR2d 519.
[4] 39 Am Jur 2d, Highways, Streets, and Bridges § 397 *et seq.*
   Duty of public authorities to erect and maintain warning signs or
   devices for curves in highway. 55 ALR2d 1000.
[5] 81 Am Jur 2d, Witnesses § 658.
   Credibility of witness giving uncontradicted testimony as matter for
   court or jury. 62 ALR2d 1191.
[6, 7] 22 Am Jur 2d, Death § 275.
   Recovery of prejudgment interest on wrongful death damages. 96
   ALR2d 1104.

and claims that prejudgment interest on the award of damages for wrongful death should have been awarded. *Held:*

1. The ice on the bridge on the day of the accident was a natural accumulation of ice which all the expert witnesses at the trial agreed could have occurred suddenly and almost instantaneously. There is no assured method for immediate detection of this condition, known as preferential icing, short of full-time human surveillance of a bridge or overpass from early fall to late spring. The Highway Department cannot be held to so strict a standard. The finding of the Court of Claims that the defendants were negligent due to inadequate methods of handling such icing conditions was clearly erroneous.

2. The findings of the Court of Claims that the defendants knew of the propensities of the bridge for preferential icing and that the "Watch For Ice On Bridge" sign posted as a warning to motorists approaching the bridge was not properly placed so as to be visible to passing motorists were not clearly erroneous.

3. The Court of Claims properly denied prejudgment interest on the award of damages for wrongful death. The Court of Claims is precluded by statute from awarding prejudgment interest on damages.

Affirmed.

1. MUNICIPAL CORPORATIONS — NEGLIGENCE — HIGHWAYS — ICE AND SNOW — NATURAL ACCUMULATIONS.

A municipality is not liable for an accident that is caused by traveling on a natural accumulation of ice and snow.

2. MUNICIPAL CORPORATIONS — NEGLIGENCE — PROTECTION OF PEDESTRIANS — SIDEWALKS — ICE AND SNOW.

A municipality is not negligent if it omits to protect pedestrians from dangers to life and health which are caused by the accumulation of ice and snow on sidewalks from natural causes, however, where the accumulation of ice and snow is the result of unnatural causes, the municipality may be liable; in order to render a municipality liable, the interference with travel must be unusual or exceptional, that is, different in character from conditions ordinarily and generally brought about by winter weather in a given locality.

3. HIGHWAYS — PREFERENTIAL ICING — BRIDGES — OVERPASSES — SURVEILLANCE — HIGHWAY DEPARTMENT.

There is no assured method for the immediate detection of preferential icing (icing which occurs on the surface of a bridge or overpass but not on the adjacent pavement) short of full-

time human surveillance of highway surfaces from early fall to late spring; the Department of State Highways and Transportation cannot be held to so stringent a surveillance.

4. MUNICIPAL CORPORATIONS — HIGHWAYS — SAFE STREETS — WARNINGS OF DANGER AREAS.

The duty of a municipality to make its streets reasonably safe includes placing signs or other safeguards at points of special danger or giving other proper warnings.

5. WITNESSES — CREDIBILITY OF WITNESSES — ISSUE OF FACT — BENCH TRIAL.

The credibility of witnesses is a question for the trier of fact, and, in a bench trial, special regard is given to the findings of the trial court.

6. DAMAGES — INTEREST — WRONGFUL DEATH.

Interest on an award of damages in a wrongful death action is computed from the time of death.

7. COURTS — COURT OF CLAIMS — TORTS — INTEREST — PREJUDGMENT INTEREST ON DAMAGES.

Prejudgment interest on an award of damages is generally not recoverable in a tort action before the Court of Claims.

*Cicinelli, Mossner, Majoros & Alexander, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Myron A. McMillan,* Assistants Attorney General, for defendants.

Before: M. F. CAVANAGH, P.J., and BASHARA and D. E. HOLBROOK, JR., JJ.

BASHARA, J. Defendants appeal from a Court of Claims judgment in favor of plaintiffs arising out of a wrongful death action and a personal injury action.

Plaintiffs allege that the Michigan Department of State Highways and Transportation failed to keep a public highway "reasonably safe and fit for

travel" as required by MCL 691.1402; MSA 3.996(102).

On November 8, 1971, at approximately 9 a.m., plaintiff Leota Greenleaf and her mother Rosa Klaus sustained serious injuries in an automobile accident on the Silver Lake overpass bridge located on U.S. 23 near Fenton.

The accident was caused when Mrs. Greenleaf lost control of her automobile upon encountering a glare ice condition that covered the entire bridge. The weather was bright, sunny and very cold. Mrs. Greenleaf testified that the highway had been clear and dry all the way from her home near Bay City to the scene of the accident, and that she had crossed at least six other overpasses enroute.

Mrs. Klaus was rendered a quadriplegic as a result of the accident and remained so until her death 13 months later. Mrs. Greenleaf also suffered personal injuries from the accident.

The Court of Claims found the defendants negligent as envisioned by the statute because of the method of road maintenance and surveillance.

Although exceedingly high and long, there is no claim that the bridge was defectively designed or constructed. The primary issue on appeal is whether a highway authority can be held liable for an accident caused by ice on a highway bridge where there is no defect in the bridge itself.

Plaintiffs claim that the defendants had knowledge of the bridge's propensities to ice under certain climatic conditions. They allege defendants failed to take appropriate maintenance actions to remedy the ice condition when it occurred and to warn of its existence.

The duty owed by defendants is set forth in MCL 691.1402; MSA 3.996(102):

"Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency."

Michigan authority has long maintained that a municipality is not liable for an accident that is caused by traveling on a natural accumulation of ice and snow. *Johnson v Marquette,* 154 Mich 50, 53; 117 NW 658 (1908), *Lubbers v Manlius Twp,* 172 Mich 387, 391; 137 NW 804 (1912).

In *Gerrie v Port Huron,* 226 Mich 630, 635; 198 NW 236 (1924), a creosoted wooden pavement approach to a bridge became slippery because of a sleet storm and an accident resulted. The Court held that, when bare, the pavement was not slippery or in any sense defective, and that the city was not required to guard against the climatic incident of sleet or rain freezing on the pavement and rendering it slippery.

There are also numerous cases involving ice and snow on sidewalks which can be analogized to the present situation since the standard of care required is the same.

In *Woodworth v Brenner,* 69 Mich App 277, 281; 244 NW2d 446 (1976), a panel of this Court held that the mere presence of ice and snow would not support an action against the city, unless there was some defect in the sidewalk itself. Whenever ice or snow is the sole proximate cause of an accident, there is no liability. See also *Mayo v Village of Baraga,* 178 Mich 171, 175; 144 NW 517 (1913), *Hopson v Detroit,* 235 Mich 248, 252; 209 NW 161 (1926).

The criterion most often adopted by the courts has been whether the danger was caused by natural or unnatural and artificial conditions. *Perl v Cohodas, Peterson, Paoli, Nast Co,* 295 Mich 325; 294 NW 697 (1940).

As noted in *Hampton v Master Products, Inc,* 84 Mich App 767, 770; 270 NW2d 514 (1978):

"The mere presence of snow or ice on a highway, street, or walk in wintertime, which causes travelers difficulty, does not constitute negligence on the part of the public authorities. A municipality in Michigan is not negligent if it omits to protect pedestrians from dangers to life and health which are caused by the accumulations of ice and snow on sidewalks from natural causes. * * *.

"When, however, the accumulation of ice and snow is the result of unnatural causes, the municipality may be liable. In order to render a municipality liable, the interference with travel must be unusual or exceptional, that is, different in character from conditions ordinarily and generally brought about by winter weather in a given locality."

The type of icing involved in this case is known as preferential icing and factually presents a case of first impression.

Preferential icing describes a situation in which there will be ice on the surface of a structure but not on the adjacent pavement. This phenomenon occurs because of the combination of the design of the structure, the properties of the earth and the pavement, and the local weather conditions, particularly, the temperature, the local humidity as it is reflected in the dew point and the radiation properties of the bridge.

Testimony indicated that the occurrence is unpredictable but is more likely to occur in the early

spring or late fall, around sunset or sunrise. A way to construct or design bridges to eliminate the possibility of the occurrence of this type of icing has not yet been found.

The facts of this case convince us that a physical phenomenon which constitutes a natural accumulation of ice has occurred here.

In the instant case, testimony elicited from witnesses for both parties indicated that it was impossible to predict when preferential icing would occur. Although temperature was one indicator, there are numerous other relevant factors.

All the expert witnesses agreed that the icing could occur suddenly and almost instantaneously.

A maintenance engineer for the Highway Department indicated that an observer could drive over a bridge and find it clear, but that it could ice up immediately afterward. It was also established that salting the highway in anticipation of this problem would be of no value since the salt would be blown off a dry road within minutes by traffic.

The fact that the Highway Department program of highway surveillance was not in operation on November 8, 1971,[1] does not clearly mandate a finding of negligence. The icing phenomenon is of a highly unpredictable and rapid nature. Short of full-time human surveillance of the bridge from early fall to late spring, there is no assured method for immediate detection of this condition.

The Highway Department cannot be held to so stringent a standard. Based upon the evidence, the

---

[1] Testimony indicated that a part of normal winter maintenance procedure was to have inspectors and observers actually drive various highway systems. This program was not implemented until after November 15th of each year. Maintenance forces and equipment are also ready for routine winter maintenance by November 15th. Prior to this date, maintenance personnel would still act promptly if an ice or snow condition is brought to their attention.

finding of the Court of Claims[2] that the defendants were negligent due to inadequate methods of handling the icing conditions is clearly erroneous. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Defendants also question the court's ruling that it did not adequately warn the traveling public of the possibility of icing occurring on the bridge.

The duty resting upon a municipality to make its streets reasonably safe includes placing signs or other safeguards at points of special danger or giving other proper warning. *Tuttle, supra,* at 52, *Joslyn v Detroit,* 74 Mich 458, 461; 42 NW 50 (1889), *Mullins v Wayne County,* 16 Mich App 365, 373, 378; 168 NW2d 246 (1969).

There is no question that defendant had knowledge of the propensities of the bridge for preferential icing. Accident statistics indicated that in 1970, ten accidents caused by ice on clear days took place near or on the bridge, and in 1971, six similar accidents were recorded.

Conflicting testimony was presented at trial whether a "Watch For Ice On Bridge" sign was visible on the date in question. The Court of Claims chose to believe plaintiffs' witnesses and found the sign was not visible to passing motorists.

After reviewing the evidence, we cannot say the

---

[2] In reaching its decision, the Court of Claims relied heavily on the recent case of *Peters v Dep't of State Highways,* 400 Mich 50; 252 NW2d 799 (1977).

In that case, the decedent was a passenger in a car that the driver lost control of upon encountering an area of flooded highway. The Court found that the flooding occurred because of an inadequate drainage system, and that such inadequacy was a defect in the highway. The Court then addressed the issue of notice and found the Highway Department liable because there was evidence tending to show they knew or should have known of the defective nature of the drainage system.

This case is clearly distinguishable from the present case, in which there has been no claim made that the bridge was defective and since natural accumulations of ice and snow do not constitute defects.

finding of the Court of Claims is clearly erroneous. The credibility of witnesses is a question for the trier of fact, and, in a bench trial, special regard is given to the findings of the trial court. *Ross v Richardson,* 29 Mich App 110, 111; 185 NW2d 106 (1970), GCR 1963, 517.1.

The final issue raised is whether the lower court erred in failing to award plaintiff prejudgment interest from the date of death.

In a wrongful death action, interest is computed from the date of death. *Vannoy v City of Warren,* 26 Mich App 283; 182 NW2d 65 (1970).

However, opposing the awarding of such interest is MCL 600.6455; MSA 27A.6455, which pertains to actions in the Court of Claims.

"No interest shall be allowed upon any claim up to the date of the rendition of judgment by the court, unless upon a contract expressly stipulating for the payment of interest. All judgments from the date of the rendition thereof shall carry interest at the rate of 5% per annum, except that judgment upon a contract expressly providing for interest shall carry interest at the rate provided by said contract in which case provision to that effect shall be incorporated in the judgment entered."

Prejudgment interest on an award of damages is generally not recoverable in tort actions before the Court of Claims. *Williams v Dep't of State Highways,* 44 Mich App 51; 205 NW2d 200 (1972), *Reich v State Highway Comm,* 43 Mich App 284; 204 NW2d 226 (1972). We agree with the lower court that the statute bars recovery of prejudgment interest in this case. See *Larkey v Dep't of Military Affairs,* 88 Mich App 657; 278 NW2d 711 (1979).

Affirmed.