SALVATI v DEPARTMENT OF STATE HIGHWAYS

Docket No. 78-2097. Submitted June 15, 1979, at Lansing.—Decided
September 19, 1979. Leave to appeal applied for.

Carmen Salvati was fatally injured in a collision when he lost
control of his automobile on a bridge which had iced over
suddenly. This "preferential icing" created a thin layer of ice
which was not visible, and the highway was otherwise clear
and dry. His widow and executrix of his estate, Helen Salvati,
brought an action for wrongful death against the Department
of State Highways, alleging that the defendant negligently
failed to keep the highway in reasonable repair and in a
condition reasonably safe and fit for travel. The Court of
Claims, Harry J. Dingeman, Jr., J., granted judgment in favor
of the plaintiff. Defendant appeals. *Held:*

1. The presence of preferential icing on the roadway, and the
posting of a sign which was not illuminated and which read
"Watch for Ice on Bridge", created a hazardous condition. The
defendant had both actual and constructive notice of the haz-
ardous condition, and the sign posted did not adequately warn
motorists of the preferential icing hazard.

2. The issue of contributory negligence was pled by the
defendant. However, the issue was not dealt with by the Court
of Claims. Therefore, the case should be remanded for further
proceedings on the issue of contributory negligence.

Affirmed, but remanded for further proceedings.

ALLEN, P.J., dissented. He would hold that preferential icing
is a natural accumulation of ice for which the state is not liable
to an injured plaintiff. In addition, the warning "Watch for Ice
on Bridge" is an adequate warning of the possibility of ice.

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Evidence § 1080.
  76 Am Jur 2d, Trial § 1239.
  81 Am Jur 2d, Witnesses § 658.
  Credibility of witnesses giving uncontradicted testimony as matter
    for court or jury. 62 ALR2d 1191.
[2] 22 Am Jur 2d, Death §§ 225, 242.
[3] 39 Am Jur 2d, Highways, Streets, and Bridges § 513.
[4, 5] 39 Am Jur 2d, Highways and Streets § 463.

Such signs are in conformity with existing standards, and the defendant should not be held liable without a showing that the defendant had prior knowledge that the sign was defective. Because the question of whether the state had prior notice of the sign's alleged inadequacy was not considered by the Court of Claims, the case should be reversed and remanded for a new trial.

### OPINION OF THE COURT

1. WITNESSES — CREDIBILITY OF WITNESSES — FINDINGS OF FACT — APPEAL AND ERROR.

The credibility of witnesses is a question for the trier of fact and, on appeal from a bench trial, special regard is given to the findings of the trial court.

2. NEGLIGENCE — WRONGFUL DEATH — CONTRIBUTORY NEGLIGENCE — BURDEN OF PROOF.

The plaintiff in a wrongful death action is entitled to a presumption that the decedent acted with due care; the burden of showing that the decedent failed to exercise due care is upon the defendant.

### DISSENT BY ALLEN, P.J.

3. HIGHWAYS — NEGLIGENCE — PREFERENTIAL ICING — NATURAL ACCUMULATION OF ICE OR SNOW.

*"Preferential icing", in which ice forms, often instantaneously, on a roadway over an overpass or bridge, is a natural phenomenon and, as such, is a natural accumulation of ice; there is no liability for an accident caused solely by natural accumulations of ice or snow.*

4. HIGHWAYS — NEGLIGENCE — DEFECTIVE CONDITIONS — SIGNS — KNOWLEDGE.

*The statutory duty of a highway department to maintain highways in reasonable repair includes the erection of proper signs; however, liability for an injury caused by a defective condition does not attach unless the unit of government responsible for the maintenance has prior knowledge of the defect and, in the case of a sign, knowledge that the sign did not adequately convey the warning required.*

5. HIGHWAYS — SIGNS — ADEQUACY OF WARNING.

*A highway sign reading "Watch for Ice on Bridge" adequately warns motorists of the possibility of ice on the roadway ahead; it is not necessary that a sign describe "preferential icing".*

*Merrill, Tatham & Rosati, P.C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Myron A. McMillan,* Assistants Attorney General, for defendant.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

D. E. HOLBROOK, J. This case involves an action for wrongful death suffered on a state highway where 'preferential icing' and claimed improper and inadequate warning signs were present at the scene of the accident.

Defendant-appellant, Department of State Highways, appeals as of right the judgment of the Court of Claims finding that defendant had negligently maintained a public highway in a manner that caused the death of plaintiff's decedent.

Shortly after 6 a.m. on the morning of February 17, 1972, plaintiff's decedent was driving southbound on I-75 in Allen Park, Michigan. At the point where I-75 crosses over the Goddard Road bridge, there are three southbound lanes, each being 12 feet in width. The portion of I-75 forming the Goddard Road bridge is 1,939 feet in length. The highway pavement was clear and dry on that portion of I-75 that was built directly on the ground. However, on the highway bridge itself, ice had developed and was present but not visible to the naked eye.

The trial judge in the Court of Claims wrote a very fine opinion, which we adopt in part as our opinion, *viz.:*

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"Plaintiff, as Executrix of the estate of her husband, file[d] a complaint in the Court of Claims against defendant for the wrongful death of her husband as a result of a February 17, 1972 accident on the I-75 bridge over Goddard Road in Wayne County. On that date at about 6:20 a.m. plaintiff's decedent Carmen Salvati was the driver of an automobile travelling south on I-75. As his vehicle approached the bridge over Goddard Road it came upon other automobiles and a tractor-trailer truck which had skidded, collided and stopped across the bridge as a result of ice on the bridge. Decedent's automobile skidded on the ice and into the semi-trailer which was across the bridge traffic lanes and he was killed in the crash.

"Plaintiff's complaint, filed pursuant to the wrongful death act, MCLA 600.2922; MSA 27A.2922, alleges that the proximate cause of the accident was the failure of the defendant to perform its statutory duties under MCLA 691.1402; MSA 3.996(102).

"Defendant denies liability and insists that it exercised reasonable diligence with respect to the conditions which caused the accident and resulted in this claim.

"This case involves a natural phenomenon referred to as 'preferential icing' throughout this record. It is a fact that bridges in the State of Michigan will frost over when certain climatic conditions and temperatures reach known degrees in the hours between 6:00 a.m. and 7:30 a.m. When a bridge deck surface temperature is 32 degrees, the air temperature is 35-36 degrees and the relative humidity is 85%, instant ice is formed. This is a fact well known to the Michigan Department of State Highways. On I-75 there is a five or six mile section on which there are some five bridges in succession. From the East, this section of I-75 and its bridges begins with the very long river Rouge Bridge and ends with the Goddard Road bridge at the South extremity. Because the 'preferential icing' phenomenon is well known to the defendant it has a contract with the Wayne County Road Commission whereby the latter maintains a salt truck 'morning patrol' of the five bridge area on I-75, from 6:00 a.m. to 7:30 a.m., Monday through Friday, beginning in November and continuing until April 15th each year. Its function is to check

for ice and salt it when found. As a matter of fact, the 'patrol' was in operation on February 17, 1972, beginning at 6:00 a.m., but despite it being in operation the accidents on the Goddard Road bridge that morning occurred as a result of 'preferential icing'.

"It is the testimony that ice forms instantaneously when the weather phenomena occurs and that the ice on the bridge deck surface cannot be seen.

"The defendant relies upon the fact of the 'patrol' and also upon the fact of a sign some distance before the approach to the Goddard Road bridge which says "Watch for Ice on Bridge". It is claimed that this and the 'patrol' satisfies its' statutory duty to keep the highway in condition reasonably safe and fit for travel. And further, that there was no way of forewarning or predicting ice on the bridge or advising the motoring public of it.

"The evidence introduced indicates that the posted sign is not illuminated; that the speed limit on I-75 in that area at the time of the accident was seventy (70) miles per hour; and, that the road leading to the bridge deck was straight and dry.

"The court finds that on February 17, 1972, at the time of the accident which took the life of plaintiff's decedent, the Goddard Road bridge on I-75 was made hazardous to vehicular traffic by the presence of 'preferential icing' thereon. That the climatological phenomenon of 'preferential icing' was well known to defendant and that it had notice of the regular possibility of it occurring on the Goddard Road bridge any day between the hours of 6:00 a.m. and 7:30 a.m. from November until April 15th. Further, that at the time of the accident the road surface approaching the bridge was dry, at 6:20 a.m. it was dark, and an unlighted sign approximately 1000 feet before the bridge was displayed on the shoulder which bore the legend "Watch for Ice on Bridge".

"It has been held that the state's obligation to maintain highways includes the duty to post signs and warn motorists at points of special danger. *National Bank of Detroit, v Department of State Highways,* 51 Mich App 415 [215 NW2d 599 (1974)]; *O'Hare v City of Detroit,* 362 Mich 19 [106

NW2d 538 (1960)]; *Williams v Department of State Highways,* 44 Mich App 51 [205 NW2d 200 (1972)]. Statutory liability requires that the State keep highways under its jurisdiction 'in reasonable repair, and in condition reasonably safe and fit for travel'. (underscoring supplied) MCLA 691.1402; MSA 3.996(102).

"It is the opinion of this court that the signing at the site does not adequately warn of the danger. The sign language "Watch for Ice on Bridge" hardly can be said to be meaningful when it gives no instruction to motorists as to the action or precaution to be taken if there is ice on the bridge. Its visibility in the dark and its 'noticeability' by motorists highly negative factors, in view of the expert testimony that tests indicate that motorists see such a sign less than fifty (50%) percent of the time. Lastly, the message "Watch for Ice on Bridge" seems to be incongruous advice in view of the testimony that when ice is present on the bridge deck surface it cannot be seen.

"It is the conclusion of this court from the evidence that the state was negligent and that its failure to keep the highway site here involved in condition reasonably safe and fit for travel was a proximate cause of the plaintiff's losses.

"The plaintiff Executrix was widowed by the February 17, 1972 accident and seeks damages for the loss of support, society and companionship resulting to her from the loss of her husband, and his funeral expenses which amounted to $1,857.48. Testimony indicated that the deceased was sixty-six years of age at the time of the fatal accident. He had a statutory life expectancy of 12.31 years.

"Defendant urges that the only recoverable item of loss is the funeral expense.

"MCLA 600.2922; MSA 27A.2922 in pertinent part provides as follows:

"(2) '* * *, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, such damages when recovered including damages for the reasonable

medical, hospital, funeral and burial expenses for
which the estate is liable and reasonable compen-
sation for the pain and suffering, while consious,
undergone by such deceased person during the
period intervening between the time of the inflict-
ing of such injuries and his death. The amount of
damages recoverable by civil action for death
caused by wrongful act, neglect or fault of another
may also include recovery for the loss of society
and companionship of the deceased.' (underscoring
not supplied)

"Also,

(1) 'Whenever the death of a person or injuries
resulting in death shall be caused by wrongful act,
neglect or default, and the act, neglect or default
is such as would, if death had not ensued, have
entitled the party injured to maintain an action
and recover damages, in respect thereof, then and
in every such case, the person who, or the corpora-
tion which would have been liable, if death had
not ensued, shall be liable to an action for dam-
ages, notwithstanding the death of the person
injured, and although the death shall have been
caused under such circumstances as amount in
law to felony. All actions for such death, or inju-
ries resulting in death, shall be brought only
under this section.' " (underscoring supplied)

"Lastly, MCLA 691.1402; MSA 3.996(102) in pertinent
part provides as follows:

"Sec. 2. '* * *. Any person sustaining bodily
injury or damage to his property by reason of
failure of any governmental agency to keep any
highway under its jurisdiction in reasonable re-
pair, and in condition reasonably safe and fit for
travel, may recover the damages suffered by him
from such governmental agency.' (underscoring
supplied)

"The language 'bodily injury' has been held not to
exclude injuries resulting in death, and it has been

observed by the Michigan Court of Appeals that numerous death actions have been maintained under MCLA 691.1402; MSA 3.996(102). *Phelps v Dep't of State Highways,* 75 Mich App 442 [254 NW2d 923 (1977)]; *Hobbs v Department of State Highways,* 398 Mich 90 [247 NW2d 754 (1976)].

"In view of the foregoing, and interpreting the statutes in a manner that does not lead to absurd results, the defendant's contention is rejected.

"Accordingly, plaintiff herein may have judgment in the total sum of One hundred Seventy-five Thousand ($175,000.00) Dollars to compensate her for all recoverable losses sustained as a result of the February 17, 1972 accident in which her husband was killed. This amount is to be reduced by a credit of Twenty-two Thousand ($22,000.00) Dollars recovered by plaintiff in settlement of a companion lawsuit brought against other defendants and instituted in the Circuit Court for the County of Wayne, being Case No. 74 007 504 NI, which was consolidated with this case and assigned to this court for trial."

We agree with the findings of the trial court that the approach to the Goddard Road bridge being dry with traction and the presence of 'preferential icing' on the bridge during the early morning hours of February 17, when this accident occurred, coupled with a posted sign not illuminated, difficult to see and only reading "Watch for Ice on Bridge", created a *hazardous condition* for vehicular traffic. We also agree that defendant did negligently maintain the public highway in a manner that caused the death of plaintiff's decedent.

We further agree that the defendant had both actual and constructive notice of the hazardous condition of the highway, having taken inadequate

steps to warn the motoring public of the dangerous conditions present. Also we note that the salt truck was there that morning and had it salted the Goddard Road bridge *before the accident* instead of after it—the accident may not have happened and plaintiff's decedent may not have lost his life. In any event the sign was clearly improper and inadequate—how can one *watch for ice that cannot be seen?* The defendant had a duty under the circumstances to warn the users of the highway of the impending danger in a meaningful manner. The minimum message that should have been conveyed to the motorist was that the bridge deck may be icy even though the highway approach to the bridge is clear and dry.[1] This defendant failed to do.

When a motorist gets on ice he cannot stop and he has no control over his vehicle. If he is going straight ahead on dry pavement and hits the unseen ice and tries to stop, he proceeds straight ahead and skids or slides until stopped.

In the recent case of *Greenleaf v Dep't of State Highways & Transportation,* 90 Mich App 277, 284-285; 282 NW2d 805 (1979), it is stated in part as follows:

"Defendants also question the court's ruling that it did not adequately warn the traveling public of the possibility of icing occurring on the bridge.

"The duty resting upon a municipality to make its streets reasonably safe includes placing signs or other safeguards at points of special danger or giving other proper warning. *Tuttle [v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976)], *supra,* at 52, *Joslyn v*

---

[1] A flashing illuminated sign "during the hours of 'preferential icing'" in the winter stating "Reduce Speed—Ice condition on Bridge, when Highway is dry" would warn a motorist of the dangerous condition.

*Detroit,* 74 Mich 458, 461; 42 NW 50 (1889), *Mullins v Wayne County,* 16 Mich App 365, 373, 378; 168 NW2d 246 (1969).

"There is no question that defendant had knowledge of the propensities of the bridge for preferential icing. Accident statistics indicated that in 1970, ten accidents caused by ice on clear days took place near or on the bridge, and in 1971, six similar accidents were recorded.

"Conflicting testimony was presented at trial whether a "Watch For Ice On Bridge" sign was visible on the date in question. The Court of Claims chose to believe plaintiffs' witnesses and found the sign was not visible to passing motorists.

"After reviewing the evidence, we cannot say the finding of the Court of Claims is clearly erroneous. The credibility of witnesses is a question for the trier of fact, and, in a bench trial, special regard is given to the findings of the trial court. *Ross v Richardson,* 29 Mich App 110, 111; 185 NW2d 106 (1970), GCR 1963, 517.1."

The trial court under the evidence was presented with a question of fact. There is no question but that a dangerous condition existed at the time and place of the accident and defendant was well aware of it. The defendant had the duty to adequately inform the travelling public of the danger by proper signs or giving other proper warning. The trial judge found in the case that "Its [the sign] visibility in the dark and its 'noticeability' by motorists are highly negative factors, in view of the expert testimony that tests indicate that motorists see such a sign less than fifty (50%) percent of the time". He further found "that the signing at the site *does not* adequately warn of the danger". (Emphasis supplied.)

After reviewing the evidence, we cannot say the finding of facts of the Court of Claims is clearly erroneous. The credibility of witnesses is a question for the trier of fact, and, in a bench trial,

special regard is given to the findings of the trial court. *Ross, supra.*

There is one issue of defendant's that requires further discussion. Defendant claims that the trial court failed to determine the question of plaintiff's contributory negligence. The defendant pled contributory negligence in its answer as an affirmative defense. Plaintiff asserts that defendant failed to present evidence on the subject and further that defendant did not argue this issue nor request such a finding by the trial court.

In a wrongful death action, the plaintiff is entitled to a presumption that the decedent acted with due care. *Koehler v Detroit Edison Co,* 383 Mich 224; 174 NW2d 827 (1970). Whether the decedent failed to exercise due care is a question of fact with the burden upon the defendant in this case to show that failure by a preponderance of the evidence.

It appears to this Court that defendant may rely on all the evidence to prove that plaintiff was guilty of contributory negligence.

GCR 1963, 517.1 states that in all actions tried upon the facts without a jury a trial judge is required to find facts specifically and state separately conclusions of law thereon. This the trial court did not do because the issue of contributory negligence was not mentioned and determined in the opinion.

We therefore affirm on all issues raised by defendant except that we remand to the trial court to make findings of fact and conclusions of law on the issue of contributory negligence.

Costs to be awarded on final disposition of the case. We retain jurisdiction.

T. M. BURNS, J., concurred.

ALLEN, P.J. *(dissenting)*. I cannot agree with the conclusion of the majority opinion that a hazardous condition was created for which the state is liable when a natural phenomenon known as "preferential icing" occurs on a bridge and where that occurrence is coupled with no more than (a) the approach to the bridge being dry and without ice and (b) a nonilluminated sign reading "Watch for Ice on Bridge". Such a holding imposes too strict and unrealistic a burden on the state. Further, such holding is contrary to the conclusion reached by a different panel of this Court that preferential icing is not a defect for which the state is liable. *Greenleaf v Dep't of State Highways & Transportation,* 90 Mich App 277; 282 NW2d 805 (1979).

The factual situation in *Greenleaf* was similar to the instant case. Plaintiff lost control of her automobile on ice on an overpass bridge on US23 near Fenton. The phenomenon described as preferential icing caused the accident. As in the case before us, the bridge was high and long, the roadbed leading to the bridge was dry, and there was no evidence that there was a defect in the bridge itself or that the bridge was improperly designed.[1] There was testimony that there was a sign reading "Watch For Ice on Bridge" although, unlike the case before us, a majority of the witnesses testified that the sign did not exist. In what the Court described as "a case of first impression" the Court rejected the finding of the Court of Claims that the Highway Department was negligent due to inadequate methods of handling the icing conditions.

"In the instant case, testimony elicited from wit-

---

[1] Plaintiff in *Greenleaf* did not plead the bridge was defectively constructed or designed. Such allegation was pled in the instant case but no witnesses testified as to the design or construction of the bridge. Thus, in both cases, there was no defect in the bridge.

nesses for both parties indicated that it was impossible to predict when preferential icing would occur. Although temperature was one indicator, there are numerous other relevant factors.

"All the expert witnesses agreed that the icing could occur suddenly and almost instantaneously.

"A maintenance engineer for the Highway Department indicated that an observer could drive over a bridge and find it clear, but that it could ice up immediately afterward. It was also established that salting the highway in anticipation of this problem would be of no value since the salt would be blown off a dry road within minutes by traffic.

"The fact that the Highway Department program of highway surveillance was not in operation on November 8, 1971, does not clearly mandate a finding of negligence. The icing phenomenon is of a highly unpredictable and rapid nature. *Short of full-time human surveillance of the bridge from early fall to late spring, there is no assured method for immediate detection of this condition.*

*"The Highway Department cannot be held to so stringent a standard.* Based upon the evidence, the finding of the Court of Claims that the defendants were negligent due to inadequate methods of handling the icing conditions is clearly erroneous. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976)." 90 Mich App 277 at 283-284. (Emphasis supplied.)

In fact, the instant case is more favorable to defendants than *Greenleaf,* since in *Greenleaf* there was no program of ice surveillance at all, whereas in the instant case a salt truck patrol was in operation. The record discloses that on the morning of the accident, at 6:03 a.m. an employee of the Wayne County Road Commission had driven a salt truck over the Goddard Road bridge, had examined it for preferential icing and had found no ice. The employee then drove north, checking on other bridges which he found without ice until

he reached the Rouge Bridge which had begun to ice. The employee salted the bridge, turned about and drove south salting the other bridges until he came to the Goddard Road bridge where he saw the accident had taken place. Based on the record, the accident occurred soon after 6 a.m. when the bridge was first inspected. Given these facts, it appears unreasonable to conclude that the defendants were either remiss in their duty to maintain a safe highway or that defendants had actual knowledge that icing had occurred. In *Hampton v Master Products, Inc,* 84 Mich App 767, 773; 270 NW2d 514 (1978), this Court favorably quoted 19 McQuillin, Municipal Corporations (3d ed), § 54.107, pp 389-391, as follows:

" 'No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place.' "

From the above it is clear that, to the extent that the majority finds liability because of ice on the bridge, the opinion errs. Preferential icing is a natural phenomenon and, as such, is a natural accumulation. In Michigan there is no liability for an accident caused *solely* by natural accumulations of ice or snow. *Hampton v Master Products, Inc, supra,* at 770-772. This was the holding in *Greenleaf* which, in a case of first impression, applied the doctrine to preferential icing.

I do agree that liability might flow from the absence of a sign or from the inadequacy of a sign.

The issue of the adequacy of the sign's wording was not reached in *Greenleaf*.[2] The trial court found, and my brethren agree, that the words "Watch for Ice on Bridge" do not adequately warn of the dangerous phenomenon of preferential icing. In their opinion the sign conveys a false message to the motorist to use his visual senses to see that which cannot be seen. I disagree. It is not necessary that a sign describe preferential icing. All that is necessary is that the sign adequately warn the motorist of *the possibility of ice.* I think the sign did so. To me, "Watch for Ice" means watch out for ice. It does not mean look for ice that cannot be seen. Further, there was not one sign, there were two. Each sign was reflective and plainly visible with headlights. The signs are in conformity with the Federal Highway Administration traffic signing manual which does not provide any other legend for signs involving warnings of ice.

Plaintiff's expert testified that a flashing sign would be preferable. However, the complexity of activating the sign when the icing occurs was not resolved. No device is available which automatically turns such a sign on when needed. But even if we assume, *arguendo,* that the sign was inadequate either because of its wording or because it was not lighted, plaintiff may not recover. For, if this be so, the "dangerous condition" is the defect in the "Watch for Ice on Bridge" sign. The statutory duty to maintain highways "in reasonable repair" includes proper signing. *O'Hare v Detroit,* 362 Mich 19, 26; 106 NW2d 538 (1960). But liabil-

---

[2] Because three witnesses in *Greenleaf* testified there was no "Watch for Ice on Bridge" sign on the day of the accident and only one witness of the defendant, whose testimony was that he had erected the sign five days before the accident, our Court held that the trial judge did not err in finding liability on the basis that the defendant failed to give any warning at all.

ity does not attach unless the local unit of government has prior knowledge of the defect, *viz.:*—that the sign did not adequately convey the warning required. No such evidence appears in the record, and the trial court made no finding that the defendant had actual or constructive notice that the sign was defective.[3]

In summary, I fear the majority invites wholesale liability by concluding that a reflectorized sign reading "Watch for Ice on Bridge" is a highway defect where preferential icing occurs. I would not, however, rule that in the case before us the state is not liable as a matter of law. In deference to the trial judge, the matter was tried without benefit of an appellate opinion in Michigan on preferential icing. Had the trial court known of *Greenleaf,* the court might well have come to a different conclusion. Completely overlooked was the question of whether the state had prior notice of the sign's alleged inadequacy. Therefore, I would not reverse and dismiss but would reverse and remand for a new trial in the Court of Claims.

---

[3] At best, the alleged inadequacy of the sign was not flagrant. It is the same signing as is recommended nationally by the Federal Highway Administration. Under prior decisions a defect must be shown to be "flagrant". *Mullins v Wayne County,* 16 Mich App 365, 380; 168 NW2d 246 (1969). See also 45 ALR3d 875, 888-889. But the requirement that the defect must be "flagrant" or "palpably dangerous" was abolished in *Arnold v Dep't of State Highways,* 406 Mich 235, 238-239; 277 NW2d 627 (1979).