SCHEURMAN v DEPARTMENT OF TRANSPORTATION

PROKOP v WAYNE COUNTY BOARD OF ROAD
COMMISSIONERS

Docket Nos. 81739, 82567. Argued October 5, 1989 (Calendar Nos. 10-
11). Decided May 7, 1990.

Catherine Scheurman, individually and as personal representa-
tive of the estate of Geraldine Rogocki, deceased, brought a
wrongful death action in the Court of Claims against the
Department of Transportation, alleging that the lack of ade-
quate street lighting along a state trunk line within the City of
Detroit constituted a defect in the road which caused the death
of the decedent. The court, James T. Kallman, J., granted
summary disposition for the defendant on the ground of gov-
ernmental immunity. The Court of Appeals, CYNAR, P.J., and
SHEPHERD and B. A. JASPER, JJ., reversed and remanded the
case to the trial court (Docket No. 94117). The defendant
appeals.

Lisa M. Prokop brought an action in the Wayne Circuit Court
against the Wayne County Board of Road Commissioners,
alleging that, in failing to remove a hedge on private property
which obstructed the view of the travelers at an intersection at
which she was struck by a motor vehicle, the board failed to
keep its street in a condition reasonably safe for travel and
thus was liable under § 2, the highway exception of the govern-
mental immunity act. The court, Thomas J. Foley, J., granted
summary disposition for the defendant. The Court of Appeals,
MACKENZIE, P.J., and DOCTOROFF and P. J. CLULO, JJ., affirmed
in an opinion per curiam, holding that the road commission
had no duty to trim, or cause the property owner to trim the
hedge (Docket No. 94600). The plaintiff appeals.

In an opinion by Chief Justice RILEY, joined by Justices
CAVANAGH and GRIFFIN, the Supreme Court *held:*

The liability of the state and the counties created by the

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges §§ 103, 104, 167, 168,
341, 343-345, 394.

See the Index to Annotations under Crossing and Crossings; High-
ways and Streets; Sidewalks.

highway exception of the governmental immunity act, MCL 691.1402; MSA 3.996(102), extends only to the improved portion of the highway designed for vehicular travel, i.e., the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel, and does not include sidewalks, crosswalks, or any other installation outside the improved portion. Neither street lighting nor vegetation growing on private property adjacent to a road can be classified as being part of the improved portion of the highway designed for vehicular travel. Thus, § 2 is inapplicable to the defendants in these cases.

1. Section 2 of the governmental immunity act provides that each governmental agency having jurisdiction over any highway is to maintain the highway in reasonable repair so it is reasonably safe and convenient for public travel. The duty of the state and county road commission to repair and maintain highways and the liability for failure to do so extends only to the improved portion of the highway designed for vehicular traffic and does not include sidewalks, crosswalks, or any other installation outside the improved portion. The highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction. Section 2 is a narrowly drawn exception to a broad grant of immunity, requiring strict compliance with the conditions and restrictions of the statute. No action may be maintained under the highway exception unless it is clearly within the scope and meaning of the statute. The phrase "improved portion of the highway designed for vehicular travel," as used in this section, refers only to the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel. The purpose of the highway exception is not to place an unrealistic duty upon the state or counties to ensure that travel upon the highways always will be safe, but to impose a duty to keep the physical portion of the traveled roadbed in reasonable repair.

2. In these cases, the installations complained of cannot be regarded as having been part of the improved portion of the highways designed for vehicular travel. The duties of the state and the counties under § 2 do not include the installation and maintenance of street lighting or the removal of a hedge on private property which obstructs the view of travelers. Therefore, the highway exception is inapplicable to the defendants.

Justice BOYLE, concurred in both the rationale and result of the opinion of the Chief Justice, stating that it was with the understanding that the application of MCL 691.1402; MSA 3.996(102) in cases alleging a failure to repair and maintain installations that are integral to, if not a part of, the improved

portion of the highway designed for vehicular travel, such as traffic lights and signs, is not precluded.

*Scheurman,* reversed.

*Prokop,* affirmed.

Justice BRICKLEY, joined by Justices LEVIN and ARCHER, concurring in part and dissenting in part, stated that MCL 691.1402; MSA 3.996(102) imposes a duty on state and county highway authorities to maintain the improved portion of a highway in a condition safe and fit for travel and provides liability for the failure to do so. Although liability clearly was not intended for failure to maintain an unimproved portion of a highway in a condition safe and fit for travel, nothing in § 2 suggests an intent to limit the liability of governmental agencies only to certain factors that are necessary to safely maintain the improved portion of the highway. The exception to immunity should apply to any cause of action alleging negligence arising out of conditions which rendered a highway unfit and unsafe for travel.

Immunity and liability under § 2 comprise interrelated but analytically distinct elements. Where, as in these cases, a plaintiff alleges negligence arising out of the condition of the improved portion of the highway, § 2 does not entitle a state or county highway authority to immunity. A plaintiff's mere avoidance of immunity, however, does not necessarily impose liability on a highway authority; the plaintiff still must prove duty, causation, and negligence.

Section 2 does not distinguish between the surface of the highway and conditions other than the surface of the highway which may foreclose the highway from being reasonably safe. Rather, it contrasts the improved portion of a highway designed for vehicular traffic with sidewalks, crosswalks, or other installations outside the improved portion. The phrase "improved portion" reflects a conceptual division which, on the one hand, removes immunity for state and county highway authorities that fail to remedy unsafe conditions affecting the improved portion of the highway designed for vehicular traffic, and, on the other hand, renders the authorities immune for conditions on sidewalks, crosswalks, or any other installation outside the improved portion.

The duty to safely maintain highways in reasonable repair extends not merely to the surface of the highway or conditions on the roadbed, but to the location of the duty. The fact that an obstruction exists off the traveled portion should not immunize an agency's failure to correct a hazard directly affecting safety on the improved portion. The focus is on the safety of the

improved portion of the road, not on the location of services, facilities, or installations that affect the conditions of travel on the improved portion.

In *Scheurman,* the holding of the Court of Appeals that immunity would not bar the plaintiff's cause of action should be affirmed. In *Prokop,* the judgment of the Court of Appeals should be vacated and the case remanded for a determination of the extent of the defendant's duty to correct the obstruction and whether the duty was carried out.

162 Mich App 774; 413 NW2d 496 (1987) reversed.

168 Mich App 119; 424 NW2d 10 (1988) affirmed.

*Cryderman v Soo Line R Co,* 78 Mich App 465; 260 NW2d 135 (1977), modified.

*Endykiewicz v State Hwy Comm,* 414 Mich 377; 324 NW2d 755 (1982), modified.

GOVERNMENTAL IMMUNITY — HIGHWAYS — LIGHTING — VEGETATION.

The liability of the state and the counties created by the highway exception of the governmental immunity act, extends only to the improved portion of the highway designed for vehicular travel, i.e., the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel, and does not include sidewalks, crosswalks, or any other installation outside the improved portion; neither street lighting nor vegetation growing on private property adjacent to a road can be classified as being part of the improved portion of the highway designed for vehicular travel (MCL 691.1402; MSA 3.996[102]).

*Sobel & Cahill, P.C.* (by *Michael A. Sobel* and *John Cahill*), for plaintiff Scheurman.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Richard D. Fox* and *Richard Toth*), for plaintiff Prokop.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, for defendant Department of Transportation.

*Saul A. Green,* Corporation Counsel, and *David A. Perkins,* Assistant Corporation Counsel, for defendant Wayne County Board of Road Commissioners.

RILEY, C.J. We granted leave to appeal in these two cases, consolidated for purposes of this appeal, to decide whether the highway exception[1] to governmental immunity[2] imposes upon the state or the counties the duty to: (1) install street lighting, and (2) remove, or cause to be removed, vegetation growing on private property which obstructs the view of motorists approaching an intersection.

With regard to the state and the counties, the liability created by the highway exception statute extends "only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of [sic] the improved portion of the highway designed for vehicular travel." MCL 691.1402; MSA 3.996(102). We conclude that the above quoted language refers only to the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel. We conclude, further, that neither street lighting nor vegetation growing on private property adjacent to a road can be classified as being part of the improved portion of the highway designed for vehicular travel. Therefore, we hold that § 2 is inapplicable to the Department of Transportation and the Wayne County Road Commission. Accordingly, we reverse the decision of the Court of Appeals in *Scheurman* and affirm the decision of the Court of Appeals in *Prokop.*

## I. FACTS AND PROCEEDINGS

### A. SCHEURMAN v DEPARTMENT OF TRANSPORTATION

On May 15, 1983, at approximately 10:15 P.M., the plaintiff's decedent, Geraldine Rogocki, was killed when she was struck by a car as she at-

---

[1] MCL 691.1402; MSA 3.996(102).

[2] MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*

tempted to cross Eight Mile Road. While most of
Eight Mile Road has streetlights, that part of the
highway where the accident occurred is not illumi-
nated. At the accident scene, Eight Mile Road is a
state trunk line, M-102, located in the City of
Detroit.

Although M-102 is a state trunk line, the City of
Detroit has installed all of the street lighting
along that part of the highway within its city
limits.[3] Furthermore, Detroit owns all the street-
lights and poles along M-102 and pays for the
electricity used by the lights.[4] However, the city
must get approval from the Department of Trans-
portation before it can install streetlights along
state trunk lines.[5]

The plaintiff sued in the Court of Claims, com-
plaining that the lack of adequate street lighting
along Eight Mile Road constituted a defect in the
road for which the Department of Transportation
should be held liable.

After extended discovery, on May 1, 1986, the
court held an evidentiary hearing, and on June 20,
1986, granted summary disposition in favor of the
defendant. On appeal, the Court of Appeals re-

---

[3] The affidavit of Toufic N. Jildeh, an Electrical Utilities Unit
Leader for the Michigan Department of Transportation, states "[t]hat
the State of Michigan does not initiate the location of street lights on
Eastbound Eight Mile Road between Van Dyke and Groesbeck [the
site of the accident], but instead such initiation is within the control
of the local municipality [Detroit]."

[4] Again, the affidavit of Mr. Jildeh states "[t]hat the installation of
street lighting, the maintenance of street lighting, and the payment
of same, for Eastbound Eight Mile Road between Van Dyke and
Groesbeck is the responsibility of the local municipality and such
local municipality pays for the installation of lightpoles, light fixtures
and for the electricity used."

[5] At the evidentiary hearing, Mr. James Tripp, a Detroit Public
Lighting Department supervising inspector of overhead lines and
safety, testified that to his knowledge, the Department of Transporta-
tion had never denied the City of Detroit a requested permit for street
lighting.

versed the decision of the Court of Claims, holding that street lighting "would be an integral part of the improved portion of the highway . . . ."[6] The defendant sought leave to appeal, which we granted on April 7, 1989.[7]

### B. PROKOP v WAYNE COUNTY ROAD COMMISSION

On July 14, 1982, plaintiff Lisa Marie Prokop was riding her bicycle in a westerly direction on the sidewalk along Schoolcraft Road, a state trunk line. Schoolcraft comes to a "T-type" intersection with Columbia Street, a county road. At the southeast corner of the intersection, there was a six-foot hedge growing on private property. As the plaintiff approached the Columbia Street intersection, the traffic light displayed green, and she proceeded into the intersection.[8]

At the same time, a van traveling northbound on Columbia Street approached the Schoolcraft intersection. As the plaintiff was crossing Columbia Street, the van began to turn east onto Schoolcraft and struck the plaintiff, causing her injury. The visibility of both the plaintiff and the driver of the van was obstructed by the hedge to the extent that neither one saw the other until it was too late to avoid the collision.

The plaintiff sued the Wayne County Road Commission, alleging that it failed to keep Columbia Street in a condition reasonably safe for travel by allowing the hedge to exist, thus obscuring the

[6] *Scheurman v Dep't of Transportation,* 162 Mich App 774, 779; 413 NW2d 496 (1987). However, the Court went on to state that its "holding does not address the merits of whether street lighting was actually required at the accident site." *Id.* at 783.

[7] 432 Mich 890 (1989).

[8] There is testimony that the traffic light was malfunctioning at the time of the accident. The driver of the vehicle that struck the plaintiff also claims that he had a green light.

vision of traffic approaching the intersection.[9] On July 30, 1986, the circuit court granted the defendant's motion for summary disposition. The Court of Appeals agreed that the road commission had no duty to trim, or cause the property owner to trim, the hedge. Accordingly, it affirmed the decision of the circuit court.[10] The plaintiff sought leave to appeal, which we granted on April 7, 1989.[11]

## II. ANALYSIS

### A

We begin our analysis by revisiting over two decades of Michigan case law and legislative history on the matter of governmental immunity. In *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), this Court abolished common-law governmental immunity.[12] Responding to the *Williams* decision, the Legislature enacted the governmental immunity negligence act in 1964.[13] However, § 7[14] was found to exceed the scope of the title of the act and was declared an unconstitutionally en-

[9] Plaintiff also sued the Department of Transportation in the Court of Claims, which suit was consolidated with the present action before the circuit court and is still pending. Further, plaintiff sued Redford Township, where the accident occurred, in the Wayne Circuit Court. The court granted summary disposition, with prejudice, in favor of the township. Finally, plaintiff reached an out-of-court settlement with both the property owner and the driver of the van.

[10] *Prokop v Wayne Co Bd of Road Comm'rs,* 168 Mich App 119; 424 NW2d 10 (1988).

[11] 432 Mich 890 (1989).

[12] The decision of the *Williams* Court was limited to the abolition of *governmental* immunity for municipalities. It did not abolish the *sovereign* immunity of the state, counties, townships, or villages. See *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 604-605; 363 NW2d 641 (1984).

[13] MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, effective July 1, 1965. This act has been amended by 1970 PA 155, 1978 PA 141, and 1986 PA 175.

[14] MCL 691.1407; MSA 3.996(107).

acted provision. *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971). This infirmity was corrected by the Legislature when it enacted 1970 PA 155, § 7(1), which granted immunity from tort liability to all governmental agencies when engaged in governmental functions. With the legislative decree of immunity on the books, this Court abrogated common-law sovereign immunity in *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976). Finally, in *McCummings v Hurley Medical Ctr,* 433 Mich 404, 411; 446 NW2d 114 (1989), we observed that the current statute grants immunity only under circumstances defined by the Legislature, and that sovereign or governmental immunity is not a " 'characteristic of government.' "

In recent years, this Court has sought to interpret the current immunity statute and its exceptions in a manner consistent with the intent of the Legislature. In doing so, we have consistently held that the immunity conferred upon governmental agencies is a " 'broad grant of immunity' with 'four narrowly drawn statutory exceptions.' "[15] *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 618; 363 NW2d 641 (1984) (BRICKLEY, J., participating). The above quoted language is cited with approval in *Reardon v Dep't of Mental Health,* 430 Mich 398, 411; 424 NW2d 248 (1988) (BRICKLEY, J., participating), and also in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139, 146; 422 NW2d 205 (1988).[16]

Thus, we again apply the rule of strict statutory

---

[15] The four statutory exceptions are MCL 691.1402; MSA 3.996(102), MCL 691.1405; MSA 3.996(105), MCL 691.1406; MSA 3.996(106), MCL 691.1413; MSA 3.996(113).

In this opinion, we withhold comment on the subject of common-law exceptions to immunity.

[16] In *Hadfield, supra* at 146, Justice BRICKLEY quoted *Ross, supra* at 618, for the proposition that the immunity conferred upon governmental agencies is a " 'broad grant of immunity' with 'four narrowly drawn exceptions.' "

construction when interpreting an exception to the immunity act. *Reardon, Hadfield,* and *Ross, supra.* See also 3 Sands, Sutherland Statutory Construction (4th ed), § 62.01, p 113.[17] It is against this backdrop that we turn to the statutory exception in question.[18]

---

However, today Justice BRICKLEY apparently reverses his view regarding the interpretation of the statutory exceptions by writing "this Court should not employ a canon of strict construction to negate the fundamental legislative purpose underlying the highway exception to immunity." *Post,* p 640.

The fact is that this Court's uniform interpretation of the statutory exceptions reflects the Legislature's desire to "make *uniform* the liability of" and "to define and *limit*" governmental liability. (Emphasis added.) Preamble to the governmental immunity act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* Thus, for us to hold otherwise would create uncertainty regarding the interpretation of the statutory exceptions to the act.

Finally, we reject the dissent's interpretation of the "legislative purpose underlying the highway exception" statute. This point is addressed in part II(B), p 631, and in n 22.

[17] [T]he rule [of strict construction] has been most emphatically stated and regularly applied in cases where it is asserted that a statute makes the government amenable to suit. . . .

[T]he standard of liability is strictly construed even under statutes which expressly impose liability on the sovereign.

[18] We acknowledge *Endykiewicz v State Hwy Comm,* 414 Mich 377; 324 NW2d 755 (1982), which states that the highway exception, § 2, need not be strictly construed as being in derogation of the common law after the state abrogated its common-law immunity. However, this case is distinguishable.

*Endykiewicz* interprets the damages sentence of the statute which provides, "[a]ny person sustaining bodily injury or damage to his property . . . may recover the damages suffered by him . . . ." The Court said that this sentence was ambiguous, therefore, it should not be interpreted to limit a plaintiff's damages. Thus, the dispositive issue in the case centered on the amount of damages *after* liability had attached. It offers no insight as to the interpretation of the standard of liability imposed upon a governmental unit. *Id.* at 382.

Furthermore, "our purpose is to ascertain and effectuate the legislative intent at the time it passed the act." *Reardon, supra* at 407. At the time the governmental immunity act became effective, the state was still shielded by sovereign immunity. Thus, the Court should have strictly construed the immunity act. To this limited extent, we modify *Endykiewicz.*

B

The cases before us today center on the highway exception statute, MCL 691.1402; MSA 3.996(102). The origin of the statute is the enactment of 1879 PA 244; 1 How Stat 1442, which imposed liability upon municipalities "in favor of any person 'sustaining bodily injury upon any of the public highways or streets in the state, by reason of neglect to keep such public highways or streets, and all bridges, cross-walks and culverts on the same in good repair, and in a condition reasonably safe and fit for travel . . . .'" *Roy v Dep't of Transportation,* 428 Mich 330, 336-337; 408 NW2d 783 (1987). With the passage of 1887 PA 264; 3 How Stat 1446c, the Legislature amended the statute and *expanded* its scope of liability to include sidewalks. *Id.* at 337.

However, when the Legislature codified governmental immunity in 1964, it *specifically reduced* the purview of the highway exception statute. Section 2 of the governmental immunity act *expressly excludes* the state and the counties from liability for "sidewalks, crosswalks or any other installation outside of [sic] the improved portion of the highway designed for vehicular travel." MCL 691.1402; MSA 3.996(102). Furthermore, the duty of the state and the counties created under § 2, "shall extend *only* to the improved portion of the highway designed for vehicular travel . . . ."[19]

The relevant portion of § 2 provides:

---

[19] The dissent chooses to ignore this unequivocal limitation upon the liability of the state and the counties when it writes, "nothing in the wording of § 2 suggests an intent to limit the liability of governmental agencies to only certain factors that are necessary to safely maintain the improved portion of the highway." *Post,* p 639.

The statute clearly indicates more than an intent to limit the liability of the state and the counties, it expressly provides that state and county liability "*shall extend only to* the improved portion of the highway designed for vehicular travel . . . ." (Emphasis added.)

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel.

The highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction. As discussed above in part II(A), we regard § 2 as a narrowly drawn exception to a broad grant of immunity. As such, there must be strict compliance with the conditions and restrictions of the statute.[20] 39 Am Jur 2d, Highways, Streets, and Bridges, §§ 343-344, pp 725-726. No action may be maintained under the highway exception unless it is clearly within the scope and meaning of the statute. *Id.* at § 346, p 729.[21]

As noted, the duty imposed by the statute upon the state and county road commissions is restricted to the "improved portion of the highway designed for vehicular travel . . . ." In *Roy, supra* at 339, we observed that the limited scope of the term "highway" found in § 2 parallels the common understanding of the word. We are in accord with the conclusion reached in *Roy.* Therefore, we hold

[20] Another seemingly obvious reason to construe the highway exception narrowly is the language of the specific § 2 phrase that we are interpreting today. The Legislature provided that the duty of the state and the counties "shall extend *only* to . . . ." (Emphasis added.) Common sense suggests that the "only" implies that the Legislature intended the duty to be strictly construed.

[21] See also 40 CJS, Highways, § 249, p 279, "The liability of the state is limited by the terms of the statute under which it is assumed and by the conditions prescribed, the statutes being subject to strict construction."

today that the phrase "improved portion of the highway designed for vehicular travel" refers only to the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.[22] *Roy, supra.*

The purpose of the highway exception is not to place upon the state or the counties an unrealistic duty to ensure that travel upon the highways will always be safe. Looking to the language of the statute, we discern that the true intent of the Legislature is to impose a duty to keep the physical portion of the traveled roadbed in reasonable repair.

We now turn our attention to the present actions to determine whether the failure of the state to install lighting or the failure of Wayne County to remove the obstruction complained of fall within the purview of § 2.

### 1. SCHEURMAN v DEPARTMENT OF TRANSPORTATION

The plaintiff argues that liability arises under

---

[22] Here again, the dissent argues that our interpretation departs from the statutory language:

> In a departure from the language of the statute, the majority apparently draws the line between the surface of the improved portion and, on the other hand, conditions affecting travel on the surface of the improved portion originating separately from the roadbed itself. The majority's analysis immunizing state or county authorities from liability for any unsafe conditions, the source of which do not originate on the surface of the roadbed, contravenes the plain meaning of the statutory language of § 2 and its principal import. [*Post,* p 642.]

The fact is that it is the dissent that departs from the language of the statute. The dissent would have us believe that § 2 provides liability for any conditions affecting travel on the surface of the improved portion of the highway, *regardless of whether those* conditions originate on the surface of the roadbed or not. Such an expansive interpretation of liability goes far beyond that which § 2 provides. The statute provides that liability "shall extend only to the improved portion of the highway," it does not contemplate "conditions, the source of which do not originate on the surface of the roadbed . . . ."

the highway exception statute because the failure to provide street lighting along that part of Eight Mile Road where the accident occurred constitutes a breach of the duty to maintain the highway in a reasonably safe manner for public travel. The defendant counters with the argument that street lighting falls outside the "improved portion of the highway designed for vehicular travel," and that MCL 247.651b; MSA 9.1097(1b)[23] excludes the state from the duty to provide street lighting along roads that are not freeways. While, as defendant argues, the fact that the Legislature, in § 651b, specifically exempted the state from having to provide lighting along state trunk lines is perhaps some evidence that street lighting is not required in order to make a highway "reasonably safe and convenient for public travel," we do not believe this to be dispositive of the question. Nor do we believe that it is the issue here. We are persuaded that in this case the issue is whether § 2 is inapplicable because the duty it creates to make roads safe, and the liability for the failure to do so, extends only to the improved portion of the highway designed for vehicular travel.

Here, the plaintiff concedes that streetlights are not a part of the improved portion of a highway per se. However, the duty of the state imposed

---

[23] MCL 247.651b; MSA 9.1097(1b) provides in part:

[M]aintaining of state trunk line highways shall include, by way of enumeration but not limitation, snow removal, street cleaning and drainage, seal coating, patching and ordinary repairs, erection and maintenance of traffic signs and markings, freeway lighting for traffic safety in cities and villages having a population of less than 30,000 and the trunk line share of the erection and maintenance of traffic signals, but *shall not in-clude street lighting,* resurfacing, new curb and gutter struc-tures for widening. On and after January 1, 1970, *maintaining of state trunk line highways shall include all freeway lighting for traffic safety.* [Emphasis added.]

under § 2 extends only to the "improved portion of the highway designed for vehicular travel" as defined above. Consequently, compliance with the conditions and restrictions of the highway exception statute negates the inclusion of street lighting within the duty of the state because the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular travel. See *Alpert v Ann Arbor,* 172 Mich App 223; 431 NW2d 467 (1988); *Zyskowski v Habelmann (On Remand),* 169 Mich App 98; 425 NW2d 711 (1988).

For the above reasons, we hold that the duties of the state and the counties under § 2 do not include the installation and maintenance of street lighting.[24] Thus, the defendant is not subject to liability for the alleged lack of adequate street lighting along Eight Mile Road.

### 2. PROKOP v WAYNE COUNTY ROAD COMMISSION

In *Prokop,* the plaintiff argues that by not removing a six-foot hedge, located on private property, that obstructed the view of travelers, the county failed to maintain the intersection in a condition "reasonably safe and fit for public travel . . . ." We disagree. While plaintiff relies on *Cryderman v Soo Line R Co,* 78 Mich App 465; 260 NW2d 135 (1977), lv den 402 Mich 867 (1978), we are persuaded that the *Cryderman* Court's affirmance of the liability of the road commission pursuant to § 2 was erroneous.

*Cryderman* involved a wrongful death action arising out of a car/train accident. The Court upheld an instruction that the jury could consider the failure of the Chippewa County Road Commis-

---

[24] The state still has a duty to maintain street lighting along freeways pursuant to MCL 247.651b; MSA 9.1097(1b).

sion to enter into a "clear vision area"[25] agreement with the railroad as constituting a breach of duty owed to the plaintiffs.[26] The Court opined that the duty imposed under § 2 extended "to clear vision areas which lie beyond the improved portions of the highway proper." *Cryderman* at 476.

This broad view of the highway exception statute is contrary to our decision today, as well as to our decision in *Roy, supra.* Therefore, we modify the decision of the Court of Appeals in *Cryderman* to the extent that the duty of the county road commission imposed under § 2 extends only to the traveled portion of the roadbed actually designed for public vehicular travel. Thus, the argument that *Cryderman* calls for the imposition of liability upon the Wayne County Road Commission is without merit.

Plaintiff also alleges that the county has a duty to enforce MCL 239.5; MSA 9.525, which provides in part:

> It shall be the duty of every owner, occupant or person having charge of lands in this state, to cut or trim, or cause to be cut or trimmed, to a height not exceeding four and one-half feet and a width not exceeding three feet, all hedges or hedge rows along or on the public highway or adjacent thereto in each and every year . . . .

Again, we disagree. Clearly, the statutory duty to trim hedges is imposed upon the person owning or occupying the property, not upon the county. Similarly, we reject the claim that the county has a duty to enforce a comparable Redford Township

[25] See MCL 469.6; MSA 22.766.

[26] The Court upheld the instruction notwithstanding its observation that "[t]he procedure authorized by [MCL 469.6; MSA 22.766] does not impose a mandatory obligation on the part of railroad and public highway authorities to enter such agreements." *Cryderman* at 475.

ordinance.[27] We agree with the general rule that governmental agencies are not liable for the failure to investigate or enforce an ordinance violation. *Randall v Delta Charter Twp,* 121 Mich App 26, 31; 328 NW2d 562 (1982). See also 57 Am Jur 2d, Municipal, County, School, and State Tort Liability, § 211, p 223; anno: *Liability of municipality or other governmental unit for failure to provide police protection,* 46 ALR3d 1084.

In sum, the indisputable fact is that the hedge in question was on private property and had no connection with the roadbed or public travel thereon. While the hedge may have interfered with compass-range vision within the intersection, it cannot be categorized as a defective condition upon "the improved portion of the highway designed for vehicular travel . . . ." See anno: *Governmental liability for failure to reduce vegetation obscuring view at railroad crossing or at street or highway intersection,* 22 ALR4th 624, § 7, pp 643-647. Therefore, as with our decision today in *Scheurman, supra,* strict compliance with the conditions and restrictions of the statute precludes the inclusion of the obstruction complained of within the § 2 duty of Wayne County. Thus, liability may not be imposed upon the defendant for a hedge, located on private property, which obstructed the view of travelers.

### III. CONCLUSION

The duty imposed upon the state and the counties by the Legislature pursuant to § 2 of the governmental immunity act extends "only to the improved portion of the highway designed for

---

[27] The Redford Township ordinance limits the height of shrubbery growth to two feet where it would constitute a hazard "to pedestrians, drivers of motor vehicles or other persons while engaged in the lawful use of the sidewalks, roads or streets . . . ."

vehicular travel . . . ." Here, the respective defendants are the Michigan Department of Transportation and the Wayne County Board of Road Commissioners. In both cases, the installations complained of cannot be regarded as being part of the improved portion of the highway designed for vehicular travel. Neither the alleged lack of adequate street lighting nor vegetation growing on private property has any connection to the traveled portion of the roadbed designed for public vehicular traffic.[28] Therefore, we conclude that the

[28] Contrary to our decision today, the dissent would offer a greatly expanded interpretation of the highway exception statute. Furthermore, the dissent implies that any immunity currently enjoyed by the state and county highway authorities should be abolished and replaced with an ordinary negligence analysis by asserting "the law of negligence provides adequate safeguards against the imposition of unwarranted liability." *Post,* p 650. This is an interpretation with which we cannot agree.

Section 2 is one of four statutory exceptions to the governmental immunity act. It is not a statute standing alone, but rather it is part of an entire legislative scheme that defines and limits the liability of our governmental agencies. As we said in *Ross, supra* at 618, this "evidences a clear legislative judgment that public and private tortfeasors should be treated differently." The report of the California Law Commission illustrates this point:

"The problems involved in drawing standards for governmental liability and governmental immunity are of immense difficulty. Government cannot merely be liable as private persons are for public entities are fundamentally different from private persons. . . . Only public entities are required to build and maintain thousands of miles of streets, sidewalks and highways. Unlike many private persons, a public entity often cannot reduce its risk of potential liability by refusing to engage in a particular activity, for government must continue to govern and is required to furnish services that cannot be adequately provided by any other agency. . . ." 4 California Law Revision Comm Reports, Recommendations & Studies, p 810 (1963). [*Ross, supra* at 618-619.]

It is for these reasons that we reject the notion that "the law of negligence provides adequate safeguards against the imposition of unwarranted liability." In Michigan, the governmental immunity act is the vehicle that provides safeguards against unwarranted liability. Today, we again interpret § 2 in a manner consistent with the spirit of the act, and in a manner which adheres to the concerns addressed by the California Law Commission.

highway exception statute is inapplicable to the defendants in the matters before us today.[29]

Accordingly, we reverse the decision of the Court of Appeals in *Scheurman,* and we affirm the decision of the Court of Appeals in *Prokop.*

CAVANAGH and GRIFFIN, JJ., concurred with RILEY, C.J.

BOYLE, J. (*concurring*). I join in both the rationale and result of the Chief Justice's opinion, with the understanding that it does not preclude the application of MCL 691.1402; MSA 3.996(102) in cases alleging a failure to "repair and maintain" installations that are integral to, if not part of, the "improved portion of the highway designed for vehicular travel," such as traffic lights and signs. See *ante,* p 637, n 29.

BRICKLEY, J. (*concurring in part and dissenting in part*). These consolidated cases address whether

[29] We acknowledge *Tuttle v Dep't of State Hwys,* 397 Mich 44, 45-46; 243 NW2d 244 (1976), in which this Court found the defendant liable for a newly opened intersection that "was not 'reasonably safe and fit for travel' by reason of inadequate signalization." However, in concentrating solely on the specific facts of the case, the decision of the Court was predicated on the finding that the highway department failed to carry out its own work orders, which called for the installation of a traffic signal at the intersection, after it determined that the existing stop control was not sufficiently noticeable.

We note that the relevant part of the opinion only addresses the elements of duty, breach of duty, and proximate cause. Nowhere in the opinion does the Court interpret the highway exception statute. Nor does it discuss whether a traffic signal falls within the "improved portion of the highway designed for vehicular travel."

Similarly, in *Salvati v State Hwy Dep't,* 415 Mich 708; 330 NW2d 64 (1982), the plurality decision indicates a willingness by the Court to include the duty to post and maintain traffic signs within the highway exception statute. Again, however, neither of the two opinions, nor any of the cited cases within them, address the issue whether traffic signs fall within the "improved portion of the highway designed for vehicular travel."

Notwithstanding our decision today, we feel it is inappropriate to express an opinion as to the validity of *Tuttle* or *Salvati* at this time.

the highway exception to governmental immunity imposes liability on state and county highway authorities for failure to install street lighting (*Scheurman*) or to remove off-road visual obstructions (*Prokop*). In both cases I disagree that the highway authorities enjoy immunity and that the standard is as stated by the majority, namely whether the services or installations that affect safety or travel on the improved portion are located off-road. However, in *Scheurman,* notwithstanding the lack of immunity, the highway legislative scheme does not impose a general duty on state highway authorities to install street lighting on non-freeway, trunk line highways. In *Prokop,* notwithstanding the lack of immunity, such a determination of the duty to remove off-road visual obstructions has not been addressed by the Court of Appeals. I would affirm the decision in *Scheurman* but would remand in *Prokop* to determine the issue of liability.

I

This Court has examined the "improved portion of the highway designed for vehicular traffic" language of MCL 691.1402; MSA 3.996(102)[1] on only a few occasions and has yet to clearly set forth our understanding of its legislative intent. These cases present that opportunity.

The majority concludes that the "improved portion" language of § 2 "refers only to the traveled

[1] The statute provides in pertinent part:

The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of [sic] the improved portion of the highway designed for vehicular travel.

portion, paved or unpaved, of the roadbed actually designed for public vehicular travel." *Ante,* p 623. The majority holds that § 2 provides no cause of action under the facts of these cases because "neither street lighting nor vegetation growing on private property adjacent to a road can be classified as being part of the improved portion of the highway designed for vehicular travel." *Ante,* p 623.

I would conclude that the obvious purpose of this section expresses the Legislature's intent to impose a duty on state and county highway authorities to maintain the improved portion of a highway in a condition safe and fit for travel and to provide liability for the failure to do so. Although the Legislature clearly did not intend liability for a failure to maintain the *unimproved* portion of the highway in a condition safe and fit for travel, nothing in the wording of § 2 suggests an intent to limit the liability of governmental agencies to only certain factors that are necessary to safely maintain the improved portion of the highway. Because many factors enter into maintaining the improved portion of a highway fit and safe for travel, such as the surface of the road, its design, and its freedom from dangerous accumulation of ice, snow, water, or unnecessarily poor visibility or unnatural obstructions, the exception to immunity should apply to any cause of action alleging negligence arising out of such conditions. Of course, immunity and liability under § 2 comprise interrelated but analytically distinct elements. Where, as in these cases, a plaintiff alleges negligence arising out of the condition of the improved portion of the highway, § 2 does not entitle a state or county highway authority to immunity. However, a plaintiff's mere avoidance of immunity does not necessarily impose liability

on a highway authority; the plaintiff still must prove duty, causation, and negligence.

At the outset of its analysis and before examining the statutory language to determine its purpose and scope, the majority announces its commitment to a strict interpretation of the highway exception because it derogates from the common-law of sovereign immunity. The majority's common-law derogation analysis foreshadows its finding of immunity for the highway authorities in these cases. However, this Court should not employ a canon of strict construction to negate the fundamental legislative purpose underlying the highway exception to immunity. In this connection, the principle articulated long ago by Mr. Justice Holmes of the United States Supreme Court regarding statutory interpretation remains cogent: "[T]he general purpose [of a statute] is a more important aid to [its] meaning than any rule which grammar or formal logic may lay down." *United States v Whitridge*, 197 US 135, 143; 25 S Ct 406; 49 L Ed 696 (1905).[2] The highway exception to governmental immunity reflects a clear legislative purpose and policy to compensate persons injured because of a governmental agency's failure to maintain highways in a condition safe for public travel.[3] The majority fundamentally undermines this purpose by imposing an overly narrow construction on the "improved portion" language of § 2.

[2] See also *Jamison v Encarnacion*, 281 US 635, 640; 50 S Ct 440; 74 L Ed 1082 (1930). "The rule that statutes in derogation of the common law are to be strictly construed does not require such adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given the measure."

[3] See *Killeen v Dep't of Transportation*, 432 Mich 1, 9; 438 NW2d 233 (1989). "[The highway exception to immunity] clearly and unequivocally express[es] legislative intent that a person injured by reason of a 'failure' 'to keep' a highway fit for travel shall have a cause of action against a governmental agency."

II

The majority's restrictive interpretation as applied to these cases does not comport with the legislative purpose of § 2. The majority concludes in *Scheurman* that the state has no duty to install street lighting "because the physical structure of the lights falls outside the traveled or paved portion of the roadbed actually designed for public vehicular traffic." *Ante,* p 633. In the majority's analysis, the fact that the source of light emanates from a structure not directly on or connected to the roadbed itself immunizes the state from tort liability. Similarly, the majority concludes in *Prokop* that because a visual obstruction exists "on private property and [has] *no connection with* the roadbed or public travel thereon[,] . . . it cannot be categorized as a defective condition upon 'the improved portion of the highway designed for vehicular travel . . . .' " *Ante,* p 635 (emphasis supplied).[4]

In my view, the majority errs in shifting the mandate of § 2 from a requirement on governmental agencies to maintain highways "in reasonable repair and in condition reasonably safe and fit for travel" to a result eliminating any cause of action for some factors which may contribute significantly to unsafe conditions on the improved portion of the highway. It seems clear even from a literal reading that the "improved portion" language of § 2 does not distinguish the surface of the highway as opposed to conditions other than the surface of the highway which may well foreclose the highway from being "reasonably safe." Rather § 2 contrasts the "improved portion of the highway

[4] The majority also suggests that the county had no duty to trim obstructing hedges on private property and implies that the absence of such a duty bolsters a finding of immunity under § 2.

designed for vehicular traffic" in opposition to "sidewalks, crosswalks or other installation *outside of [sic] the improved portion* of the highway designed for vehicular travel." (Emphasis supplied.)

The "improved portion" language of § 2 reflects a dividing conceptual line. On one side, § 2 removes immunity for state and county highway authorities that fail to remedy unsafe conditions affecting the "improved portion of the highway designed for vehicular traffic." On the other side, state and county authorities remain immune for conditions on "sidewalks, crosswalks or any other installation outside the improved portion . . . ."

In a departure from the language of the statute, the majority apparently draws the line between the surface of the improved portion and, on the other hand, conditions affecting travel on the surface of the improved portion originating separately from the roadbed itself. The majority's analysis immunizing state or county authorities from liability for any unsafe conditions, the source of which do not originate on the surface of the roadbed, contravenes the plain meaning of the statutory language of § 2 and its principal import.

III

The majority's analysis in these cases that § 2 immunizes state or county highway authorities for unsafe conditions created upon the paved or traveled roadbed by off-pavement visual obstructions or lighting also does not comport with well-reasoned precedent developed in this Court and the Court of Appeals. Case law interpreting § 2 has consistently, and in my view, correctly, rejected arguments equating "improved portion" with phys-

ical roadbed, consonant with the mandate of § 2 to maintain highways in safe and reasonable repair.[5]

This Court in *Salvati v State Highway Dep't,* 415 Mich 708, 715; 330 NW2d 64 (1982), recognized that a highway authority could incur liability for its failure to post signs warning of hazardous highway conditions. Although *Salvati* did not squarely address the "improved portion" language of § 2, the case demonstrates that *immunity* would not shield the state for failure to warn of known defective conditions affecting the improved portion. While warning signs exist apart from the paved or traveled portion of the highway, we did not hesitate to state that the failure to install such signs could remove immunity (i.e., expose highway authorities to liability) for accidents resulting on the improved portion.[6]

This Court first analyzed the improved portion language of § 2 in *Roy v Dep't of Transportation,* 428 Mich 330; 408 NW2d 783 (1987). We held in *Roy* that the improved portion language of § 2 precluded a cause of action for a bicycle accident occurring on a bicycle path. In my judgment, no better example of the purpose of the limiting "improved portion language" exists than that pre-

---

[5] Michigan courts have held that the obligation of governmental agencies to prevent or correct defective highways encompasses three duties: to design and construct highways properly so reasonably safe for public travel, to repair defects and remove obstructions, and to warn of defective conditions affecting highway safety. See comment, *Governmental immunity from tort liability in Michigan: A comprehensive analysis of the doctrine and related statutory and judicial exceptions,* 28 Wayne L R 1761, 1792 (1982).

[6] Similarly, in *O'Hare v Detroit,* 362 Mich 19, 22; 106 NW2d 538 (1960) we dealt with a predecessor highway exception statute in addressing whether the failure of the city to "replace or warn concerning [a] knocked-down stop sign represented 'neglect to keep . . . streets . . . in condition reasonably safe and fit for travel' within the meaning of [the] statute." Although we did not have to analyze the "improved portion" language of § 2 in *O'Hare,* we had no difficulty in finding that the duty to maintain safe highways was not limited solely to the surface of the highway.

sented by the facts in *Roy.* The plaintiff in *Roy*
could prove no facts showing the accident resulted
from negligent conditions either on or affecting the
improved portions of the highway designed for
vehicular traffic. We commented in *Roy* on the line
between immunity and nonimmunity imposed by
the limiting "improved portion" language of § 2:

> Indeed, to the extent it shows any legislative
> judgment on the benefits of separation, the exclu-
> sion of sidewalks, crosswalks, and other installa-
> tions from the duty of maintenance and repair,
> reflects a conclusion that pedestrians and users of
> these installations have been sufficiently protected
> by the separation of them from motorists, without
> any need to impose a duty of maintenance and
> repair enforced by liability for resultant injuries.
>
> *          *          *
>
> Whereas the prior acts specifically included
> bridges, sidewalks, crosswalks, and culverts as sub-
> ject to the duty to maintain and repair enforced by
> liability, the new legislation specifically excluded
> from liability "sidewalks, crosswalks or any other
> installation outside of [sic] the improved portion of
> the highway designed for vehicular travel."
>
> *          *          *
>
> Section 2 does not reveal a legislative purpose to
> protect bicyclists in general, as suggested by the
> Court of Appeals. Indeed, the statute does not offer
> general protection to pedestrians or motorists
> without regard to *location. The statute announces
> a duty to repair and maintain the highway so that
> the improved portion designed for vehicular travel
> is reasonably safe and convenient for public travel.*
> The criterion used by the Legislature was not
> based on the class of travelers, *but the road on
> which they travel. [Roy, supra,* pp 336-341. Empha-
> sis supplied.]

The essence of our distinction in *Roy* illustrates
that the duty to safely maintain highways in

reasonable repair extends not merely to the surface of the highway or conditions on the roadbed, but to the location of the duty.

The Court of Appeals has more extensively analyzed § 2, and its viewpoints on the definition of the "improved portion of the highway" remain instructive and, in my view, correct. The Court first addressed the meaning of "improved portion" in *Lynes v St Joseph Rd Comm*, 29 Mich App 51; 185 NW2d 111 (1970). The plaintiff in *Lynes* alleged negligence in the county's failure to properly maintain a stop sign. The Court of Appeals reversed the trial court's decision granting summary disposition on the basis of § 2:

> The trial court, by equating "the improved portion" with "traveled portion" (*pavement*), construed the statute to provide the defendant with immunity from liability for injuries proximately caused by the defendant's negligence in the construction and maintenance of traffic control devices. In so construing the statute, the trial court erred. [*Id.*, p 55. Emphasis supplied.]

The *Lynes* Court emphatically rejected the defendant's argument urging immunity because the stop sign existed outside the "improved portion" of the highway:

> The argument presented by the defendant, and accepted by the trial court as the basis for granting the defendant a summary judgment, that [MCL 691.1402; MSA 3.996(102)] exempts the defendant from liability in the instant case because the stop sign is not part of the "improved portion of the highway designed for vehicular travel" is not persuasive. Under defendant's interpretation of the statute, *the duty of the defendant to keep the highways safe and fit for travel would be limited to the pavement itself* and whatever equip-

ment physically touches the pavement. Although this interpretation would provide a certain ease in the application of the statute, *it would completely negate the first part of the statute, as well as that part of [MCL 224.21; MSA 9.121], both of which impose the duty on the defendant to keep the highways safe and fit for travel.* We cannot accept the argument that the legislature intended such a result. It is recognized law that in construing a statute effect must be given to every part of it and one part must not be so construed as to render another part nugatory. [29 Mich App 59. Emphasis added.]

In a case that sheds considerable light on the distinction at issue here, *Miller v Oakland Co Road Comm,* 43 Mich App 215; 204 NW2d 141 (1972), a tree on the unimproved portion of the highway fell and struck a motorist driving on the improved portion. The plaintiff alleged that the county road commission had been warned that similarly situated trees had previously fallen on the road, but had failed to take preventive action. The trial court granted summary judgment for the county. The Court of Appeals addressed whether § 2 imposes liability for an agency's failure to keep a highway " 'in condition reasonably safe and fit for travel . . .' and for failure to remove known hazards from the side of the road . . . caus[ing] injury to [a] plaintiff by falling on '. . . the improved portion of the highway designed for vehicular travel . . . .' " *Miller, supra,* p 217. In other words, the Court asked whether or not immunity would absolve a road commission from removing trees on the unimproved portion of the highway which resulted in unsafe conditions on the improved portion. In reversing the decision of the trial judge, the Court pointedly rejected the argument "that because the tree fell on top of plaintiff's truck, the defendant is somehow immu-

nized from liability under [§ 2] because the tree was not yet on the highway. This argument exalts words over logic." *Id.,* p 219. More specifically, the Court said, "Given this knowledge of the potential road hazards, the defendant failed to keep '. . . in condition reasonably safe and fit for travel . . .' the road on which plaintiff was driving by failing to remove potential hazards from the side of the road. . . . [D]efendant's liability was incurred on '. . . the improved portion of the highway designed for vehicular traffic . . . .'" *Id.* Similarly, in *Prokop* the fact that an obstruction exists apart from the improved portion should not immunize a highway agency's failure to correct a hazard directly affecting safety on the improved portion.

*Cryderman v Soo Line R Co,* 78 Mich App 465; 260 NW2d 135 (1977), represents a case factually closer to *Prokop.* The Court in *Cryderman* addressed "whether the duty, imposed upon the road commission to provide and maintain highways 'reasonably safe and fit for travel,' extends to clear vision areas which lie beyond the improved portions of the highway proper." *Id.,* p 476. The Court noted that a separate statutory procedure existed by which highway authorities and railroad companies could voluntarily enter into "clear vision area" agreements, but held, relying inter alia on *Lynes, supra,* that § 2 affirmatively imposed a duty to maintain such areas. Today's opinion overrules this holding in *Cryderman,* as "contrary to our decision today, as well as to our decision in *Roy, supra.*" *Ante,* p 634. Although *Cryderman* is obviously inharmonious with today's majority decision, the majority fails to support its assertion that *Cryderman* is inconsistent with *Roy* and the highway exception statute.

On the basis of this line of cases, it hardly seems surprising that the Court of Appeals in *Scheurman*

held that lighting constitutes an integral part of the improved portion of the highway notwithstanding that the light posts themselves exist off the roadbed. The Court of Appeals in *Prokop,* in contrast, departed from prior cases and held that immunity precluded a cause of action because the hedge obstruction did not comprise part of the improved portion of the highway. The *Prokop* Court did not even attempt to distinguish the many cases finding no immunity for defendant agencies where unsafe conditions existed on the improved portion regardless of whether the factors causing the unsafe condition originated off or away from the roadbed itself.[7] Similarly, the majority's holding that immunity under § 2 applies to any unsafe condition not coextensive with the actual paved or traveled portion of the roadbed seriously undermines the legislative mandate of § 2 to maintain safe highways.

Of the many cases interpreting § 2, only *Zyskowski v Habelmann (On Remand),* 169 Mich App 98, 103-104; 425 NW2d 711 (1988), suggested that immunity applies to "the physical structure of the road itself."[8]

> On reconsideration, we are convinced that the language of the § 2 exception to immunity evinces an intent to limit the imposition of tort liability in highway maintenance cases. The first sentence of the statute sets forth the duty in terms of "reason-

---

[7] See *Johnson v State of Michigan,* 32 Mich App 37; 188 NW2d 33 (1971), *Williams v State Hwy Dep't,* 44 Mich App 51; 205 NW2d 200 (1972), *Detroit Bank & Trust Co v State Hwy Dep't,* 55 Mich App 131; 222 NW2d 59 (1974), *Van Liere v State Hwy Dep't,* 59 Mich App 133; 229 NW2d 369 (1975), *Bennett v City of Lansing,* 52 Mich App 289; 217 NW2d 54 (1974), *Hall v Dep't of Transportation,* 109 Mich App 592; 311 NW2d 813 (1981), and *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984).

[8] The Court of Appeals in *Alpert v Ann Arbor,* 172 Mich App 223; 431 NW2d 467 (1988), following *Zyskowski,* held that street lighting did not comprise part of the "improved portion" of the highway.

able repair." Such a phrase suggests that only the
physical structure of the road itself was
contemplated. . . . We therefore hold that the
illumination or lack of illumination does not con-
stitute part of the "improved portion of the high-
way designed for vehicular travel" . . . .

Unlike the majority today in *Scheurman,* the
*Zyskowski* panel did not base its decision on the
fact that the light poles illuminating the highway
exist apart from the roadbed itself. Very simply
and without citing any authority, the panel con-
cluded that the duty of governmental agencies to
maintain the roads in a safe condition did not
extend beyond the physical roadbed.

IV

It is not difficult to understand that the Legisla-
ture in making an exception to the general princi-
ple of governmental immunity would do so only to
the extent of insuring safety on the improved
portions of the highway, as opposed to sidewalks,
bicycle paths, and other installations unrelated to
vehicular traffic. However, the notion of predicat-
ing a statutory scheme on the use of tort liability
exposure as an incentive to maintain safe condi-
tions on our highways on the one hand and then
sharply restricting the corresponding duty and
liability to *only some factors* that affect conditions
on the improved portion on the other, stretches
any plausible explanation of legislative intent.
This is the result of the majority's holding in these
two cases.

It seems almost unimaginable that the Legisla-
ture would intend to provide an incentive for
governmental highway agencies to safely maintain
the roadbed of the highway but not to maintain
unobstructed visibility for vehicular traffic because

the obstruction does not originate from the road-bed itself. Certainly, § 2 does not reflect a legislative intent to impose unreasonable burdens on highway authorities to provide safe highway conditions. However, the law of negligence provides adequate safeguards against the imposition of unwarranted liability. The ultimate result of today's decision eliminates any cause of action alleging unsafe conditions affecting the improved portion of a highway which do not orginate from the highway's physical pavement. Neither the plain language nor the underlying purpose of § 2 requires this unjustified restriction of liability.

The "improved portion" limitation in § 2 does not mean, as the majority suggests, that the government's duty is confined to that which makes it improved, that is, the roadbed, but the duty that is exempted from immunity is confined to the area of the improved portion as opposed to the area adjoining the improved portion. In other words, it is a spatial limitation, not a limitation on the factors and conditions that contribute to the safety of the improved portion as opposed to the safety of adjoining walks and installations. Maintaining a safe highway requires many activities and facilities off the road, including the proper mixture of the concrete that goes into the roadbed.

The focus of the exception of § 2 is on the safety of the improved portion of the road, not on the location of services, facilities, or installations that affect the conditions of travel on the improved portion.

V

I believe the Court of Appeals in *Scheurman,* while correct in holding that immunity would not bar plaintiff's cause of action, erred in finding

defendant liable for non-freeway state trunk line street lighting. The plaintiff in *Scheurman* conceded that § 2 imposed no general duty on the state to install street lighting on non-freeway trunk line highways. The Court of Appeals recognized that MCL 247.651b; MSA 9.1097(1b)[9] relieved state highway authorities from a duty to install non-freeway street lighting.

However, although the Court of Appeals correctly stated that "[w]hile various statutory schemes regulate who must pay for the costs of highway maintenance and repair, those statutes do not mention governmental immunity and do not affect it," then, in my view, erroneously went on to assert that "[t]he statutes pertaining to the costs of repairs and maintenance of state trunk line highways have nothing to do with defendant's ultimate responsibility for making sure that the highways under its jurisdiction are safe." 162 Mich App 774, 783; 413 NW2d 496 (1987). The Court of Appeals should have resolved this legal question in the defendant's favor where the plaintiff conceded no general duty to light non-freeway trunk line highways, and a later-enacted statute similar in purpose to § 2 specifically relieves state authorities from providing such lighting. Assuming these stat-

---

[9] MCL 247.651b(1); MSA 9.1097(1b)(1) provides:

The state transportation department shall bear the entire cost of maintaining, in accordance with standards and specifications of the department, all state trunk line highways including highways within incorporated cities and villages except that the cost of maintaining additional width for local purposes as provided in section 1c shall be borne by the city or village. For the purposes of this act except for sections 11 and 12, maintaining of state trunk line highways shall include, by way of enumeration but not limitation, snow removal, street cleaning and drainage, seal coating, patching and ordinary repairs, erection and maintenance of traffic signs and markings, . . . *but shall not include street lighting,* resurfacing, new curb and gutter structures for widening. [Emphasis added.]

utes should be read in pari materia, it would seem
illogical for one statute to impose liability on
highway authorities for an item that another stat-
ute relieves the authorities from maintaining.

As stated previously, the questions of duty and
liability are separate from immunity. Therefore, I
would concur in the result in *Scheurman.*

In *Prokop,* a situation totally different from
*Scheurman* existed, in that the hedge obstruction
creating the unsafe condition on the improved
portion violated both state law[10] and a township
ordinance.[11] The Court of Appeals concluded that
the "defendant's duty . . . extended only to the
improved portion of the highway and not to the
hedge obstruction located on private property."
168 Mich App 119, 125; 424 NW2d 10 (1988). The

___

[10] MCL 239.5; MSA 9.525 provides:

It shall be the duty of every owner, occupant or person
having charge of lands in this state, to cut or trim, or cause to
be cut or trimmed, to a height not exceeding four and one-half
feet and a width not exceeding three feet, all hedges or hedge
rows along or on the public highway or adjacent thereto in
each and every year, except such hedges as shall have been set
out for the protection of fruit trees and nursery stock. Trim-
mings or brush from such hedge rows shall not be left lying
within the limits of the highway, but shall be forthwith re-
moved: Provided, That this section shall not apply to streets or
highways within incorporated cities.

[11] Township of Redford, Ordinance No. 149 provides in pertinent
part:

Unlawful to permit dense growth. It shall be unlawful for the
owner or occupant or any person or persons, firm or corpora-
tion in charge of any lot or parcel of land within the Township
of Redford to permit or allow to grow thereon any weeds,
shrubbery or trees which, because of height or density, shall
constitute a public hazard to pedestrians, drivers of motor
vehicles or other persons while engaged in the lawful use of the
sidewalks, roads or streets in the Township of Redford. In all
such locations, shrubbery shall not exceed twenty-four (24)
inches in height, weeds shall not exceed six (6) inches in height,
and tree limbs shall not hang lower than six (6) feet above
ground level.

Court went on to say that "[o]ur conclusion is buttressed by MCL 239.5; MSA 9.525 which provides that it is the duty of every landowner to trim hedges that are growing along a public highway to a height not exceeding 4½ feet. We believe that this statute evidences the Legislature's intent that liability for hedges that obstruct a motorist's vision should rest with the private landowner, not with the state or county road commissions." *Id.*

The Court of Appeals erroneously, in my view, used the hedge-trimming statute to buttress its argument for defendant's immunity. It confused the duty of a landowner to trim vegetation on private property with the duty of a county to maintain the "improved portion" of a highway under its jurisdiction fit and safe for vehicular travel. Again, whether in the end the county has the duty to take action to abate the obstruction is a question separate from whether the county is immune from liability.

Although MCL 239.5; MSA 9.525 imposes a duty on landowners to trim vegetation along a highway on private property, nothing in the statute implies that a highway authority is absolved from its duty to maintain the improved portion safe and fit for vehicular travel. The existence of the state statute and city ordinance it would seem, if anything, should buttress the duty of the county to proceed against a private owner's failure to abate a visual obstruction affecting safety on the improved portion of the highway. The question whether the county acted negligently by failing to take steps to correct a hedge obstruction could not be answered solely by reference to the state and township hedge-trimming statutes. Because of the erroneous conclusion of the Court of Appeals that the exception to governmental immunity did not apply to this case, it did not analyze the duty issue.

For these reasons, I would vacate the judgment of the Court of Appeals and remand the case for a determination of the extent of defendant's duty to see to it that the obstruction was corrected and whether that duty was carried out.

LEVIN and ARCHER, JJ., concurred with BRICK-LEY, J.